(No. 30501.—

In re Estate of Cora E. Reighard, Incompetent.—
(Phineas Morrow, Conservator, Appellee, *vs.* Lyle
Leonhart, Executor and Trustee, *et al.*, Appellants.)

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

Brown & Brown, of Geneseo, and Andrews & An-
drews, of Kewanee, for appellants.

Edward J. Stone, and Shaw & Chamberlain, both
of Geneseo, for appellee.

Mr. Chief Justice Fulton delivered the opinion of the
court:

This is an appeal from an order of the circuit court
of Henry County directing a conservator to renounce a
will on behalf of his ward, the incompetent widow of the
testator. The cause was heard in that court on an appeal

from the county court, where a similar order was entered on the *ex parte* petition of the conservator.

Cora Reighard was 79 when her husband, the testator, died in October, 1946. His will was made in 1943. Therein he provided in the second clause, in substance, as follows: What was left of his estate he devised to a trustee, the net income from the trust estate to be paid to his widow in quarterly installments as long as she lived. The trustee was to render to her annual statements of account showing the financial condition of the trust estate. Whenever, in the opinion of the trustee, the net income of the trust estate is not sufficient for the comfort, welfare or maintenance of the widow, he was authorized, (a) in his discretion, to expend the principal of the trust as he may deem necessary for such purposes, or, (b) in his discretion, pay to the widow, from time to time, such sums from the principal of the trust as he may deem necessary or proper for such purposes. The will further provided: "Whenever any person entitled to the payment of income hereunder shall be a minor, or shall be otherwise under disability, the Trustee is authorized and empowered to retain all monies so payable to said beneficiary and to use and apply so much thereof as the Trustee shall deem necessary or desirable to and for the comfort, proper support and maintenance of such person until such disability shall cease."

The testator left no child or children or descendants thereof, and no father or mother. Upon the termination of the trust, the *corpus* thereof was willed to nieces and nephews of the testator. The will disposed of considerable real estate, and the question of the validity of the renunciation involves a freehold.

The will was admitted to probate in November, 1946. The executor, also named by the testator as the trustee thereunder, accepted and qualified as to each office. In December, 1946, on the conclusion of proceedings therefor, Cora Reighard was declared by the county court to be in-

competent, and a conservator was appointed over her person and estate. In the same month the conservator filed his petition in the county court asking for an order of court directing him to renounce the will in behalf of his ward. The petition was *ex parte* in form, and the court ordered the conservator to notify the attorney of the executor of the hearing date set by the court. The executor and Belvo Leonhart (a niece of the testator, also a devisee under the will, and mother of the executor,) participated, with their counsel, in the hearing. The jurisdiction of the county court over the petitional matter was placed in issue, and the court reserved ruling thereon. In March, 1947, on conclusion of the hearing; the court entered an order directing the conservator to renounce the will, finding in the order it had jurisdiction of the parties and the subject matter.

The executor-trustee of the will appealed to the circuit court, and therein filed his motion to dismiss the petition of the conservator on the ground the county court, and the circuit court on appeal, each lacked jurisdiction to authorize and direct the conservator to renounce the will on behalf of his ward. He alleged such renunciation can be ordered only by a court of equity. A second reason advanced being that the entire proceeding is merely an *ex parte* one, insufficient to establish jurisdiction in either court over the rights and interests of the trustee, executor, or other persons interested in the land of the testator as owners of, or as beneficiaries under the will. The motion was denied, and after a hearing the conservator was ordered to renounce the will. This appeal followed.

The appellants contend that the basic error in the order appealed from is the complete absence of power of the probate court, or the circuit court on appeal, to authorize the conservator to renounce the will of Frank S. Reighard. In support of this view they submit that a probate court is not a court of general equity jurisdiction, but possesses only such chancery powers as are conferred by statute.

The appellee insists that this precise question has heretofore been considered by this court, and decided adversely to the contentions of appellants, in the case of *Davis* v. *Mather,* 309 Ill. 284. That was a partition case where the plaintiff's title was based upon a renunciation executed and filed by a guardian *ad litem* appointed by the probate court. The facts show that Annie Davis, the deceased, was survived by her husband, legally declared feeble-minded, but she left no child or children or descendants thereof and no father or mother. By the provisions of the will her husband was devised a life estate in certain real property and the remainder given to one Belle Mather, a sister. She was named executrix under the will and qualified as such. She was also appointed conservatrix of the estate of the husband, George Davis. The probate court later entered an order finding it to be for the best interest of said ward and his estate that a renunciation of his wife's will be filed in his behalf and that Belle Mather, his conservatrix, make and file the same. The conservatrix refused to comply with the order, and thereupon the probate court appointed a guardian *ad litem* and next friend for the feeble-minded ward, and ordered and directed him to make such renunciation. A renunciation in the form prescribed by statute was filed on the same date. An appeal was taken from this action of the probate court, by the executrix, to the circuit court of Madison County, where the findings of the probate court were approved, and the identical orders above referred to entered in the circuit court. No appeal was taken from the order and finding of the circuit court.

In the partition suit later filed, the appellants defended on the ground that the renunciation filed in behalf of the husband was null and void, because the right of renunciation was a personal right belonging solely to the devisee, and that a renunciation based upon the facts shown in that case could be effected only in a court of general chancery jurisdiction; also that the probate court was without juris-

diction of the subject matter and without power to order a renunciation in behalf of the ward. The decree of the chancellor in the partition case held the orders of the circuit and probate courts correct and this court affirmed such findings.

In the opinion filed in the case of *Davis* v. *Mather,* 309 Ill. 284, it was stated that: "The sole question presented on this record is whether or not a renunciation of a bequest or devise may be made at the direction of the probate court by the next friend of a surviving insane husband, under section 12 of the Dower Act." That case further held that by reason of the statute conferring upon the probate court equitable jurisdiction over the estate of incompetent wards, it was peculiarly within the power of that court to pass upon transactions concerning the ward's estate, and that having determined it was not for the best interest of the ward's estate to accept the provisions of the will, it was proper for the probate court to order on behalf and in the name of the ward a renunciation thereof.

The court in that case referred partially to section 79 of the Administration Act then in force. While that section was repealed upon the passage of the new Probate Act, we believe the provisions of section 50 of the new Probate Act, (Ill. Rev. Stat. 1947, chap. 3, par. 202,) have in effect substantially renewed, re-enacted and retained the provisions of section 79 in full force since the year 1939.

Counsel for appellants, in seeking to sustain their contention that the decision in *Davis* v. *Mather* was erroneous and unduly extends the power of the probate court without any authority whatever from the legislature, cite and quote extensively from cases in other jurisdictions which indicate that in those States the probate court has been denied such power. Those authorities might be more thoroughly considered if this were a new question in Illinois. In order to thus hold, this court would be called upon to repudiate

the principles announced in *Davis* v. *Mather* which have been the law of Illinois for more than a quarter of a century. We adhere to what was said in that opinion and believe it is squarely decisive of the major question in this case.

The appellants further contend that it was erroneous for the probate court to decide the matter on an *ex parte* application and that the proceeding should have been dismissed for want of necessary parties. We feel that the appellee here followed the usual procedure in probate courts by the conservator of an incompetent filing a petition requesting an order directing him to renounce the will. From that point the case progressed as an adversary proceeding. The title of the case indicates that certain of the beneficiaries under the trust created by the will, as well as the executor and trustee, appear as appellants. Testimony was introduced in their behalf and they were represented and heard at every stage of the proceeding.

The filing of a renunciation by one authorized to do so is a matter of right. When filed by a widow who is sane, it is an *ex parte* proceeding, and when filed by a conservator under the authority of the court, no different procedure is required. There is no statutory requirement for making all persons interested in the will parties to the filing of such renunciation. Here, the probate court directed that notice be given the executor and trustee, and he, together with certain of the beneficiaries under the will, appeared and challenged the right of the court to order the conservator to make the renunciation in behalf of the incompetent widow. No motion was made by the appellants asking the court to make other persons parties, and the only question for the court to determine was as to what course should be taken in the best interests of the widow. We do not feel that the failure to make all persons interested under the will parties defendant to such a proceeding was error on the part of the probate court.

It is further urged by appellants that the evidence did not justify renouncing the will. Without reciting the details of the testimony, the trial court heard the witnesses and a careful examination of the testimony does not disclose that its finding was clearly or manifestly against the weight of the evidence. We feel that the probate court was warranted in finding it was for the best interests of the incompetent widow that a renunciation of the will be filed, and hold accordingly.

The order of the circuit court of Henry County is affirmed.

*Order affirmed.*

Mr. JUSTICE CRAMPTON, dissenting:

The case upon which the contention over the question of jurisdiction depends is *Davis* v. *Mather,* 309 Ill. 284. A study of that case, and of the cases cited therein, convinces me that a re-examination of the law bearing upon this particular question of jurisdiction is necessary. *Davis* v. *Mather* originated as an action for the partition of real property alleged to have been devised to appellees Belle Mather *et al.* by George Davis. Appellants Frank Davis *et al.* defended on the ground George Davis did not own the property because his renunciation of the will of his deceased wife, Annie Davis, was invalid. Annie Davis left no child or children or descendants of any child or children, and no father or mother. She was survived by her legally declared feeble-minded husband, a sister (Belle Mather,) and certain nephews, as her heirs-at-law. The probate court entered an order in the estate of George, feeble-minded, finding it would be for the best interests of George and of his estate, that a renunciation be made of the provisions of the will, by which instrument a life estate was given to him in certain real property with remainder over to Belle Mather in fee. Belle was executrix of the will and the conservator of George. She refused to file a renunciation; a guardian

*ad litem* was appointed to file it, and he did so. The probate court also entered an order making such renunciation on behalf of George. Belle, as executrix, took an appeal to the circuit court, and it approved the action of the pro-bate court. Further appeal was never taken. George Davis subsequently died, and by his will (made while he was competent,) devised one half of his real property to appellees, who were his brothers and sisters. Belle Mather was the executrix of this will. The partition complainant claimed one half of the real property owned by George at his death, averred to have come to him as an heir-at-law of his deceased wife, by reason of the renunciation. A decree was entered in favor of the complainants, and Belle Mather with others appealed, contending the renunciation to be null and void on the ground the right of renunciation under the facts could only be effected in a court of general chancery jurisdiction.

The determination of this court in *Davis* v. *Mather* that the statute placed in the probate court the equitable powers concerning questions arising out of the renunciation of will provisions is predicated upon the supposedly joint effect of section 79 of the then Administration Act, now section 50 of the Probate Act, (Ill. Rev. Stat. 1947, chap. 3, par. 202,) and the holding in *Sebree* v. *Sebree,* 293 Ill. 228, connected to section 79 by statements in *Hannah* v. *Meinshausen,* 299 Ill. 525.

Section 79 reads, "In all cases where a widow or surviving husband shall renounce all benefit under the will, and the legacies and bequests therein contained, to other persons, shall, in consequence thereof, become diminished or increased in amount, quantity or value, it shall be the duty of the court, upon settlement of such estate, to abate from or add to such legacies and bequests in such manner as to equalize the loss sustained or advantage derived thereby, in a corresponding ratio to the several amounts of such legacies and bequests, according to the amount or

intrinsic value of each." Ill. Rev. Stat. 1937, chap. 3, par. 80.

The salient facts of the *Sebree case* are as follows: Appellant filed her petition in the probate court of Cook County, asking that a table of heirship entered prior to that time in the matter of the estate of James Sebree (who died testate) be set aside, a new table entered in which she should be declared the widow of Sebree, and a widow's award set off to her. Appellant was left a legacy in the will. She also claimed that she had renounced under the will and was therefore entitled to a widow's share of the estate. These contentions presented the issue whether Sebree and appellant were, at the time of his decease, common-law husband and wife. The probate court found that they were. An appeal was taken by the executors of the will and a daughter of Sebree to the circuit court, where the petitional matter was heard *de novo*. That court found she was not the widow of Sebree. Only three questions were presented to this court on the appeal from the circuit court: (1) the question of the jurisdiction of the circuit court to hear the appeal on the particular matter, (2) whether the circuit court erred in finding appellant was not the widow of Sebree, and (3) whether it also erred in holding her renunciation of the will provision to be void. In contending over the question of the jurisdiction of the circuit court to entertain the appeal from the order of the probate court, the appellant argued the appeal should have been direct to the Appellate Court by reason of section 8 of the Appellate Court Act. (Smith's Ill. Rev. Stat. 1921, chap. 37, par. 32.) In deciding this particular question, we said, "Proceedings of the nature involved here were unknown to the common law, and jurisdiction in cases involving such questions was vested in the ecclesiastical or chancery courts. Although county or probate courts are without chancery or general law jurisdiction, yet in probate matters they have jurisdiction of an equitable character

and may adopt forms of equitable proceedings. * * * In all of its essential features the proceedings had upon the petition of the appellant for an order declaring her to be the widow of the deceased are purely statutory. * * * The proceeding here was purely statutory and is not a suit or proceeding at law or in chancery within the meaning of section 8 of the Appellate Court Act, and the appeal, therefore, was properly taken from the probate court to the circuit court." We held the circuit court as to question (2) did not err in finding, as a matter of fact, that appellant was not the wife of Sebree. Therefore, question (3) in regard to her renunciation being complete disappeared, for only a spouse can renounce will provisions and take under a statute a fractional part of the testator's estate.

*Sebree* v. *Sebree,* therefore, does not hold that the statute involving the matter of election to renounce will provisions, when considered with section 79 of the Administration Act, confers on the probate court equitable powers concerning renunciations. Furthermore, I now fail to perceive wherein the language of section 70 directly, or by necessary intendment, in anywise operates to confer equitable powers upon a county or probate court in respect to the court, or the conservator, renouncing a will in behalf of an incompetent ward of the court. This is true whether we take section 79 as standing alone or in association with the holding in *Sebree* v. *Sebree.*

The facts in *Hannah* v. *Meinshausen* were: The probate court of Cook County ordered Hannah to pay to Meinshausen's estate the balance of a bid made by him at an administrator's sale of real estate to pay debts. The order was affirmed in the Appellate Court. Hannah contended the probate court did not have the power to compel him to complete his bid, for such power rested only within the equitable powers of courts of general chancery jurisdiction. The administrator believed section 101 of the Administration Act (Smith-Hurd Rev. Stat. 1931, chap. 3, par. 102,)

to be broad enough to grant to the probate court general chancery power to proceed for contempt against a bidder who refuses or fails to complete his bid. Section 101 treats of the powers of the probate court in proceedings to sell real estate of the deceased person in order that there may be funds with which to pay estate debts. By an amendment thereto in 1887, the probate court was given the power in such proceeding to determine questions of conflicting or controverting titles arising between the parties to the proceeding, and to remove clouds from title. This court said probate courts are not courts of general chancery jurisdiction, their jurisdiction being established by article VI of the constitution of 1870, and the acts of the legislature enacted thereunder. The power of the probate court to compel Hannah to honor his bid, if it possesses such power, must come from section 101 as amended by the act of 1887. The probate court did not have the general chancery power to enforce by contempt proceedings the specific performance of the bid made at an administrator's sale to pay debts. A petition to sell real estate to pay the debts of a deceased owner is not a chancery proceeding. We held the amendment of 1887 to section 101 was not intended by the legislature to confer powers upon probate courts except insofar as those powers may be set forth in section 101. Probate courts, being creatures of the statute, have only such powers as are conferred by statute, and such courts are without general chancery powers, although they may adopt the form of equitable proceedings. (Citing *Sebree* v. *Sebree,* 293 Ill. 228.) We held the probate court lacked the power to require Hannah to implement his bid by payment.

It is clear our decision upon the issue involved in *Hannah* v. *Meinshausen* could not in anywise fortify the prior holdings of this court in *Sebree* v. *Sebree,* so as to make the latter applicable in determining in *Davis* v. *Mather* that the statute ever conferred equitable powers upon county and probate courts in matters arising out of attempts to

renounce will provisions on behalf of insane or incompetent widows of testators.

*Andrew* v. *Basset,* 92 Mich. 449, 52 N.W. 743, is cited in *Davis* v. *Mather.* The statute in Michigan in regard to renunciation is in substance similar to the Illinois statute. And in that case a renunciation in the probate court by the guardian of an insane widow of the will provisions of her testator husband was sustained. However, the Supreme Court of Michigan said in the opinion, "Under our statute, probate courts have jurisdiction, not only as to all matters relating to the settlement of estates of deceased persons, but as to the estates of minors, and all others under guardianship. That jurisdiction embraces not only the appointment of guardians, and control over their official conduct, but the care and protection of the estate of the wards. Indeed, the grant of jurisdiction to probate courts is so general and extensive under our statute that to the section conferring jurisdiction the legislature added a proviso that such grant should not be construed to deprive circuit courts in chancery of concurrent jurisdiction." That court could not have said in any plainer language that the legislature of the State of Michigan has given to the probate courts of that State all the powers of a court of general chancery jurisdiction in all matters concerning guardians and estates of the insane wards of that court. In such matters such courts have concurrent jurisdiction with circuit courts sitting in chancery.

In *Kerner* v. *Peterson,* 368 Ill. 59, at pages 76 and 77, we quoted from *Davis* v. *Mather* and *Sebree* v. *Sebree,* in respect to the question of renunciation. Mrs. Peterson, the widow, was sane and made her own renunciation. The only holding in *Kerner* v. *Peterson* in regard to renunciation was that because of the quoted statements from the two cases mentioned probate courts have jurisdiction of the subject matter of such renunciation. In the same case *Hannah* v. *Meinshausen* was cited to the effect that probate

courts are not courts of general chancery jurisdiction and possess only such powers as are conferred by statute. The mention of those cases in *Kerner* v. *Peterson* is no reason for utilizing it in deciding in this case the question whether county and probate courts have original jurisdiction over the renunciation of wills by the legal representatives of incompetent or insane spouses, or whether circuit courts have the exclusive original jurisdiction.

Where inconsistent or alternative gifts are tendered and there is an implied or expressed intention that one shall be taken to the exclusion of the other, a court of equity will compel the donee to make an election between the two gifts. Thus we have an application of the equitable doctrine of election. The most frequent and important application of this doctrine in American courts is where a husband devises property to his wife and the necessity arises of her selecting either such gift or taking under the statute in lieu thereof. Any person in a situation where an election is called for must elect so long as he is *sui juris*. Where a person labors under disabilities or incapacities of legal status as do infants and lunatics, a court of equity will make the election on his behalf after having made, in obedience to a necessary condition precedent, an inquiry about what action is for his advantage. This is true even though the infant or lunatic be under the care of a guardian or conservator. (Pomeroy, Equitable Remedies, 3d ed. vol. 1, secs. 461 *et seq.*) Some confusion has arisen because of statements in decisions in other jurisdictions where the particular court was endeavoring to state the historical background in respect to the jurisdiction of courts of equity to step in and determine the question of renouncement of will provisions for the insane widow of a testator. The confusion came about by reason of the failure to clearly distinguish between the jurisdiction and power of the Chancellor of the Exchequer and the jurisdiction exercised by him as the judge of the court of chancery in regard to lunatics. Holdsworth,

in his History of the English Law, 1903 ed., vol. 1, p. 262 *et seq.,* said the Chancellor's jurisdiction rested upon two bases: (1) what he did in issuing writs to inquire into the alleged insanity, all of the proceedings pertaining to the issuance of the writ and control of the inquiry forming a part of the common-law jurisdiction of the court of chancery, and (2) that part which came to him personally by direct delegation of the crown. The latter being the more important. It was this direct delegation which enabled the Chancellor to appoint the committee for the lunatic, and he was under the duty of seeing that it duly administered the lunatic's property. This jurisdiction was not in anywise connected with the jurisdiction exercised by him as the judge of the court of chancery. Holdsworth quotes what Lord Justice James said in *Beall* v. *Smith,* (1873) L. R. 9 Ch. Ap. 85, 92, "Unsoundness of mind gives the Court of Chancery no jurisdiction whatever. It is not like infancy in that respect. The Court of Chancery is by law the guardian of infants whom it makes its wards. The Court of Chancery is not the curator either of the person or the estate of a person *non compos mentis,* whom it does not, and cannot make its ward. \* \* \* It can no more take upon itself the management and disposition of a lunatic's property, than it can the management and disposition of the property of a person abroad, or confined to his bed by illness. The court can only exercise such equitable jurisdiction as it could under the same circumstances have exercised at the suit of the person himself if of sound mind."

The custody over the person and property of lunatics and idiots was anciently vested in the lord of the fee and later became vested in the crown. It was part of the king's executive power as *parens patriae.* He delegated the duties of this obligation to his chancellor, who fulfilled those duties by virtue of a distinct commission and not by reason of his character of chancellor or by reason of his being the

Lord Chancellor of the High Court of Chancery. Following our separation from England the care and custody of the persons and estates of such distressed persons rested in the people. The people invested the courts with that responsibility, either directly by provision in the organic law or by leaving the responsibility to the legislature, and that body vested it in the courts.

In the case of *Dodge* v. *Cole,* (1881), 97 Ill. 338, this court had to consider a chancery action commenced in the circuit court by the conservator of a lunatic. It was an endeavor to have set aside conveyances of real estate belonging to his ward because of alleged fraud. Therein it was contended a circuit court sitting in chancery did not have jurisdiction of the cause on the ground there was no law in Illinois, at the time the land was ordered sold, which conferred upon it the power to order a sale. The argument was that historically, the control over the persons and estates of lunatics was executive and not judicial in its nature. This court conceded the decided weight of authority established the proposition that a court of chancery has no inherent power to decree a sale of lands belonging to idiots, lunatics, infants and others laboring under a disability. This court rendered an exhaustive opinion, wherein the historical background was given of the jurisdiction of courts of equity over the persons of infants and their personal property, and the nonjurisdiction of those courts in respect to lunatics and their property. We said that insofar as this country is concerned, in respect to jurisdiction over the real property of infants, the mere differences between personal and real property are no longer valid. The true and rational grounds on which the jurisdiction of equity over all the property of infants rests are: (1) the primary duty of the State to protect and provide for its citizens who are incapable of caring for themselves, (2) the right of every owner of property to have it applied to his support, (3) the absolute necessity for such relief, (4) that

such applications call for the exercise of judicial power, and (5) that the duty which the State owes to persons under disability can be more appropriately and efficiently accomplished only in courts of equity. If courts of equity have the power, in the absence of legislation, to order the sale of their real estate, (and since there is no question as to the power of equity courts to order the sale of personal property of an infant,) we held, for the reasons stated in the opinion, such courts may in like manner direct the sale of the real estate of an infant, lunatic, or idiot, whenever necessary for his support; the holding we said applying with more force, if possible, to the case of a lunatic or idiot.

Equitable jurisdiction, in the course of time, by reason of the convenience of the procedure of courts of equity, embraced the administration of the estates of deceased persons and subjects related thereto, such as legacies, marshalling of assets, election and conversion. (Holdsworth, History of English Law, 1903 ed., vol. 1, p. 252.) This jurisdiction did not extend, however, to the probate or contest of a will. Equity courts in this country possess that administrative jurisdiction over estates of decedents unless, in given instances, such has been taken away from them by either constitutional mandate or legislative action. By the constitution the circuit courts of this State have jurisdiction of all cases in law and equity. In *People* v. *Graw,* 363 Ill. 205, we said, "The term 'all causes in law and equity' includes every claim or demand in a court of justice which was known at the adoption of the constitution as an action at law or a suit in chancery, and also all actions since provided for which involve personal or property rights of the same nature as those previously enforced by actions at law or in equity." The constitution clothes the circuit courts with jurisdiction over all causes in equity, and the legislature has no power whatever to deprive it of such jurisdiction. (*Stephens* v. *Chicago, Burlington and Quincy Railroad Co.* 303 Ill. 49.) Whatever jurisdiction

over the administration of estates has been bestowed upon the county (probate) courts is original jurisdiction, but it is not exclusive jurisdiction; on the contrary, it is concurrent with that of the circuit courts. The jurisdiction of courts of equity is paramount in matters of the administration and settlement of estates, and they may control courts of law therein. (*Chapman* v. *American Surety Co.* 261 Ill. 594.) Where abrogation or abridgement of this jurisdiction of courts of equity is attempted by statute, such statutes are to be strictly construed. A court of equity will assume jurisdiction in the settlement of an estate and supersede the county or probate court only in the event an extraordinary circumstance arises. *Genz* v. *Genz,* 254 Ill. 161.

We now examine the constitution of this State in order to correctly appraise the jurisdiction of county courts. Section 1 of article IV of the constitution of 1818 vested the judicial power "in one supreme court, and such inferior courts as the general assembly shall, from time to time, ordain and establish." Section 6 of the same article takes cognizance of the then existence of circuit courts, for the justices thereof shall appoint their own clerks. Section 1 of article V of the constitution of 1848 placed the judicial power in a Supreme Court, circuit courts and county courts, etc. Section 18 provided, "The jurisdiction of said court [county] shall extend to all probate and such other jurisdiction as the general assembly may confer in civil cases, and such criminal cases as may be prescribed by law, where the punishment is by fine only, not exceeding $100." In construing this section as related to the questioned power of the county court to award a writ of *mandamus* under a statute we said in *Board of School Inspectors* v. *People ex rel. Grove,* 20 Ill. 526, that when construing grants of power to inferior courts nothing is to be held as granted by implication, save only what is necessary to a full exercise of their general powers.

Section 1 of article VI of our present constitution provides for the inclusion of county courts in the State judicial structure. Section 18 of that article, insofar as applicable in this case provides, "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlements of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, *and such other jurisdiction as may be provided for by general law."* Section 20 of article VI is permissive in that it allows the legislature to establish probate courts when a stated fact prevails within a county. The probate courts, "when established, shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators, and settlement of their accounts; in all matters relating to apprentices, and in cases of the sales of real estate of deceased persons for the payment of debts." The language of the two sections pertaining to jurisdiction commencing with, "shall have original jurisdiction," and ending with, "in all matters relating to apprentices," is to all intents and purposes identical. Section 20 does not contain the general clause of section 18 as italicized above.

In the case of *In re Estate of Mortenson,* 248 Ill. 520, this court construed the jurisdictional effect of an act extending to county and probate courts jurisdiction over testamentary trusts, which was enacted for the purpose of giving to those courts complete jurisdiction over the complete administration of testate estates. It was an effort to give those courts full chancery powers over such trusts. This court, speaking through Justice Cartwright, said county courts have never been confined to exercising only probate jurisdiction. Section 18 of article VI only determines their general jurisdiction and the last clause thereof enables the legislature to confer upon county courts any

jurisdiction it may deem advisable. The jurisdictional subjects set forth in section 20 were historically subjects under the control of courts having probate jurisdiction. We said the word "probate" has a technical meaning, *i.e.,* the official proof of a will or last testament; and the phrase, "probate matters" has a wide meaning through the process of acquisition, and the words were undoubtedly used in sections 18 and 20 in a broad general sense. The settlement of an estate both in legal and common understanding includes the grant of letters, collection of assets, allowance of claims, payment of debts, selling real estate to pay debts, and distribution of the remaining real property of the decedent to the lawful takers by descent or devise without any action of the probate court, for such passes independent of estate administration. We took a different view in the *Mortenson case* of section 5 of the act of 1874, establishing county courts, than we did in *Winch* v. *Tobin,* 107 Ill. 212. The section, we said, does not do more than state that the jurisdictional subjects contained in section 18 should be considered as probate matters for the purpose of fixing, and separating the terms of court. The law jurisdiction of the county court should be exercised at stated terms, leaving the court always open for the transaction of other matters. The appointment of guardians and conservators, the settlement of their accounts and matters relating to apprentices do not, in terms of general jurisdiction fall within the definition of "probate matters." It was therefore necessary for the legislature to include them in order to accomplish the legislative purpose in respect to terms of court. We quoted from Woerner's American Law of Administration, (2nd ed.,) section 50, as follows, "Logically, the jurisdiction of probate courts should extend to all matters necessarily involved in the disposition of the estates of deceased persons from the time of the owner's death until the propery has been placed in the possession of those to whom it devolves." We thereafter said probate courts

have exclusive jurisdiction over the personal estate of a deceased and no jurisdiction over his real estate, although they do have certain power in regard to real estate, such as ordering a sale thereof to pay debts, setting off the homestead on such sale, bringing persons before them who have a claim or interest in the land to be sold in order to determine questions of title and enable the buyer to know the exact nature and extent of the estate for which he is bidding.

In *Frackelton* v. *Masters,* 249 Ill. 30, the validity of the act in respect to jurisdiction over testamentary trusts, which was involved in the *Mortenson case,* was attacked. In deciding that issue we said section 20 of article VI limits the jurisdiction of probate courts to the specific subjects stated therein. Again, we said the phrase "probate matters," as used in sections 18 and 20, includes only matters pertaining to the settlement of the estates of deceased persons. The administration of testamentary trusts has no more relation to the settlement of estates of deceased persons than do bills for the partition of real estate of the testator among those persons entitled thereto. The legislature cannot clothe probate courts with general equity jurisdiction over testamentary trusts but it is not barred from so clothing the county courts. It can do so by virtue of the general clause of section 18.

The facts that a widow has the statutory right to a share of the testator's estate despite will provisions for her benefit, that the testator may, under the law, make a testamentary offer to purchase the right at a price representing some other fractional portion of his estate, and that she must elect to accept or reject the offer, are nothing more than a legislative expression and recognition of the distinct equitable doctrine of election, *i.e.,* that a donee, whose property (here, what the widow would take under the statute,) has also been given to another person, must elect to take under and in conformity with the will, or else to take against it.

It has always been part and parcel of that doctrine that, in the application thereof, the court of equity having jurisdiction over the matter will, when necessary, substitute its judicial determination for the impaired intellect of an elector. This power of judicial determination did not come out of "probate" or "probate matters," for equity courts did not have jurisdiction over the probate of wills. It did not come from the jurisdiction of equity over the settlement of estates, for originally that jurisdiction only extended to personal property estates. One use of the equitable doctrine of election was as a weapon by equity courts to combat the harshness and unjustness of the rigid rules of the common law relating to the devolution of real property. It did not come from any control equity had over the persons or property of lunatics or idiots, for it could only exercise such equitable jurisdiction in respect to those persons and their property as it could have exercised under the same circumstances had such persons been sane. Though we said in *Dodge* v. *Cole,* 97 Ill. 338, a court of equity will, if necessary, make use of its inherent power and apply the appropriate equitable principle to new circumstances in order to protect and implement a right which would otherwise be lost or ineffective, such is not the case here for it is not a new circumstance in the annals of equity jurisprudence. That circumstance has often occurred, and the right involved has always been protected and implemented *via* the court of equity making the. election for the incompetent elector.

It is evident that this particular power of judicial determination in matters involving the application of the equitable doctrine of election is the child of stark necessity and the inherent power of courts of equity.

The legislature has not conferred upon the county or probate courts the general equitable jurisdiction of courts of equity and such jurisdiction cannot be implied. Whatever equitable powers they may have, or whatever equitable

procedure or forms they may follow, they do not, in the absence of specific grant, embrace the right to elect for an incompetent widow whether to take under the will or under the statute. The circuit court on appeal exercised the same jurisdiction as the county court and functioned only as a court of review by virtue of the appeal. Section 50 of the Probate Act (Ill. Rev. Stat. 1947, chap. 3, par. 202,) in my estimation contains no language which, when considered alone or in conjunction with that of the statutory provisions anent renunciation of a will, even implies that county or probate courts have jurisdiction to renounce a will in behalf of an incompetent widow who is a ward of the court. For the above reasons the order should· be reversed.