(No. 34317.—

THE FIRST NATIONAL BANK OF DANVILLE, Conservator, Appellant, *vs.* ROY FORREST MCMILLAN, Exr., *et al.,* Appellees.

*Opinion filed September 20, 1957.*

62

Bookwalter, Carter, Gunn & Hickman, of Danville, (R. Z. Hickman, of counsel,) for appellant.

Acton, Baldwin, Bookwalter & Meyer, of Danville, (D. S. Baldwin, of counsel,) for appellees.

Mr. Chief Justice Davis delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Vermilion County, denying leave to The First National Bank of Danville, Illinois, conservator of the estate of Samuel V. Jinkins, incompetent, to renounce the will of its ward's deceased spouse, Ethel C. Jinkins. The decree was entered on appeal and trial *de novo* from a like order of the probate court.

The pleadings consist of the petition for leave to renounce the will, founded on the best interest of the ward's estate, and the objections thereto filed by the executor and heirs of the decedent, as respondents. The appeal is directed to this court because a freehold is involved.

The evidence established that the decedent, at the time of her death, owned fifty-nine acres of land in southern Illinois, having an estimated worth of $2800, and an undivided one-half interest in seven residential properties in

the city of Danville, valued at not to exceed $31,000, as well as personal property appraised at $1000; that the ward individually owned farm land calculated to be worth $400,000, subject to encumbrances of approximately $59,200, as well as the remaining one-half interest in the seven residential properties in the city of Danville; that he is now under constant hospital care and is totally and permanently incompetent, both mentally and physically; that his closest relatives are either brothers and sisters, or nieces and nephews; that Mr. Jinkins was a bachelor, 50 years of age when he married Mrs. Jinkins, age 49, who had been married and had two adult sons; that the ward was 66 years of age when this case was heard in the circuit court and had a life expectancy of 11.96 years; that he had been hospitalized since February of 1954, due to a cerebral thrombosis caused by an arteriosclerosis cardiovascular disease; that prior to this disability, he had engaged in the practice of law; that at the time of this marriage, he owned the valuable farms heretofore referred to, and the decedent owned only the southern Illinois farm; that during the 16 years of their marriage, he accumulated seven parcels of real estate in the city of Danville, which included the house where they lived, and placed title to these properties in their names, as joint tenants; that for several years prior to her death, Mrs. Jinkins was so deaf that it was impossible to communicate with her other than by written memoranda; that before entering the hospital in February of 1954, Jinkins had written to her on the subject of the rights of each of them in the property of the other; that his stenographer found this memorandum in his desk on March 24, 1954, and delivered it to his conservator; and that it was subsequently admitted in evidence as petitioner's exhibit 1. It read in part:

"If I die 1st—you get all of my personal property and 1/2 of my real estate and a dower right in the other 1/2 of my real estate, which is 1/3 of the income for your life—or if you pre-

fer you could convert the 1/3 dower in 1/2 of real estate to a 1/3 of 1/2 = or a 1/6 of the real estate, which added to the 1/2 statutory fee right would make $1/2 + 1/3 = \frac{3+1}{6} = 4/6$ or 2/3 of all my real estate plus all my personal property after the payment of debts and costs of administration of my estate. Of course, that is exactly what the statute gives you—and I couldn't make a will and leave you any less—and I don't want to and wouldn't make a will—the statute is good enough for me and it should be for you too.

"Now, let's see what I get if you die 1st—I get 1/3 of all your personal property plus 1/3 of your real estate—2/3 of your personal property goes to Forrest and Elza equally, 1/2 to each—that is 1/3 of the whole each. The same is true of the real estate— 1/3 to each of them and 1/3 to me. You couldn't make a will and leave any less to me and any more to them, because the surviving spouse can always if he or she desires renounce under a will giving nothing or less than the statute gives and elect to take under the statute and get what the law gives the surviving spouse and what wise men—the lawmakers—have considered just, equitable, and right.

"Like old time religion, it, the statute, is good enough for me and should be for you too.

"You inherit much more under the statute if I die 1st than I would inherit under the statute if you die 1st because of the difference in the size of our estates."

The evidence further proved that in March of 1954, about one month after the ward entered the hospital, the petitioner was appointed conservator on his behalf; that title to the seven parcels of real estate remained in joint tenancy until December 17, 1955, when Mrs. Jinkins executed a deed to a nominee, which stated its purpose to be "to destroy the joint tenancy in deeds of record to the above described real estate;" that the nominee thereupon reconveyed these parcels of real estate to Mrs. Jinkins and the ultimate effect of these deeds was to cause the title to this real estate to vest in Samuel V. Jinkins and Ethel C. Jinkins, as tenants in common; that the deeds under consideration were admitted in evidence as petitioner's exhibits 3 and 4; that five days prior to the execution of these deeds, Ethel C. Jinkins executed a will which was

admitted in evidence as respondents' exhibit 1 and contained the following provisions:

"SECOND: I give and bequeath to my husband, Samuel V. Jinkins, the sum of One ($1.00) Dollar. This bequest is made not because of any lack of affection for him, but because of the fact that he has considerable estate of his own and has on numerous occasions expressed a desire to me and my sons that all of my estate should be given to my two (2) sons.

\* \* \*

"FOURTH: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, I give, devise and bequeath to my sons, Roy Forrest McMillan and Elza Floyd Mc-Millan, share and share alike, in fee simple. If either of my sons predecease me, his share shall go to his children."

The evidence further shows that on the date this will was admitted to probate, the conservator filed petition for leave to renounce it; that during the year 1955, the conservator incurred expenses in the approximate sum of $20,000 for nursing and hospital care for its incompetent ward; that the estate owed about $18,000 in debts at the time of the trial; that the net income from the ward's farms for 1955 was $21,800; that lawsuits were pending against the estate of the incompetent, representing a potential liability of $26,000; and that the petitioner was faced with the necessity of selling real estate to pay debts. Testimony of a devisee under the will and of the wife of another devisee was received in evidence on behalf of the respondents, over petitioner's objection, which tended to establish that Mr. Jinkins had stated on various occasions that it was not his intention to take any of his wife's property in event she should predecease him. Additional evidence, received on behalf of the petitioner, proved that Mr. Jinkins, prior to his illness, lost from $30,000 to $50,000 in an unsuccessful business venture which made it necessary for him to borrow money; that Mrs. Jinkins, when requested to sign a $15,000 note with him to secure funds to apply on this debt, refused, then reluctantly signed the note; and that a bitterness developed between them over this incident.

Under the decree denying leave to renounce, the petitioner takes $1 on behalf of its ward under the will; and if permitted to renounce, would receive approximately $10,000.

The petitioner contends that the lower court should have determined the right to renounce the will by applying either the test of what is for the best interest of the ward's estate, or what the incompetent would have done, had he been competent. The respondents urge that in case of incompetency, the election to renounce on behalf of the incompetent is a matter within the sound discretion of the court; that such renouncement is not granted under the law as a matter of right; that in exercising this discretion, the court must take into consideration the facts and circumstances surrounding the parties and then apply the tests as suggested by petitioner.

The purpose of sections 16 and 17 of the Probate Act, (Ill. Rev. Stat. 1955, chap. 3, pars. 168 and 169,) creating the right of a spouse to renounce the provisions of the will and setting forth the methods of its accomplishment, is to enable the spouse to elect which method of taking would be most advantageous to him or her. (*In re Estate of Donovan,* 409 Ill. 195.) The provision in the will of a spouse is in legal effect an offer on the part of such spouse to purchase the statutory interest of the survivor in the estate of the deceased for its benefit. (*McGee* v. *Vandeventer,* 326 Ill. 425, 432.) Renunciation is a rejection of that offer, and the provisions of the will made for the spouse are in effect obliterated. However, the remaining provisions are not destroyed but remain operative upon the property not included within the statutory share of the spouse. (*In re Estate of Donovan,* 409 Ill. 195, 202; *Golden* v. *Golden,* 393 Ill. 536, 539; *Sueske* v. *Schofield,* 376 Ill. 431, 435; *Spaulding* v. *Lackey,* 340 Ill. 572, 577.) The statute is designed to confer privileges and to prevent impositions upon the surviving spouse, (*Kerner* v. *Peterson,*

368 Ill. 59, 80,) and if competent, the survivor has an absolute right to renounce the will of the deceased spouse by filing a renunciation in accordance with the provisions of section 17.

Our probate courts exercise equitable jurisdiction over the property of persons who are mentally ill and physically incapacitated (Ill. Rev. Stat, 1955, chap. 3, pars. 202, 264-282; *In re Estate of Reighard,* 402 Ill. 364,) and, if the the surviving spouse is incompetent, a personal representative, guardian *ad litem,* or next friend, may act for and on behalf of the incompetent to bring the question of renunciation before the court for determination. We have construed section 17 of the Probate Act to authorize election by the court for the incompetent.

The factors which enter into the decisions of the courts in electing for or against renunciation on behalf of an incompetent vary with the different jurisdictions. (See Annotation 74 A.L.R. 452; 147 A.L.R. 336.) The prevailing view is stated in *Van Steenwyck* v. *Washburn,* 59 Wis. 483, 509, 17 N.W. 289, 295, where the court stated: "But we think it is the clear duty of the court to exercise a sound discretion in the matter—to consider everything having a legitimate bearing on the election to be made. Consequently, acting upon that principle, the court, in view of Mrs. Washburn's insane condition, in view of the liberal and ample provision made for her benefit in the will, and in consideration of all the facts, does elect for her that provision (*the will*) as being on the whole the best and most advantageous for her interest and welfare." (Italics ours.) A vigorous dissent from this view is expressed in *Emmert* v. *Hill,* 226 Ill. App. 1, where the court limits the determination of election on behalf of the ward largely to a pecuniary consideration.

This court has considered the problem generally. (*In re Estate of Reighard,* 402 Ill. 364; *Sippel* v. *Wolff,* 333 Ill.

284; *Davis* v. *Mather,* 309 Ill. 284.) Although it has not delineated the factors which shall be considered in deciding the propriety of renunciation, it has shown a sympathetic regard for the best interest of the ward's estate. However, a decision in the case at bar does not require that this court adopt either the liberal or restricted view concerning such renunciation.

Here the conservator asked leave to renounce the will in order to avoid disinheritance, to reject the $1 offered under the will, and to elect to take approximately $10,000 under the statute. The estate of the decedent, valued at approximately $35,000, consisted largely of an undivided one-half interest in seven parcels of real estate acquired by Mr. Jinkins, who caused the title thereto to be vested in Mrs. Jinkins and himself as joint tenants. The decedent owned only the southern Illinois farm, of an estimated worth of $2800 at the time of their marriage. Over one and a half years after the ward's illness and the appointment of a conservator on his behalf, Mrs. Jinkins made the will in question, and converted the joint tenancy relationship in the seven parcels of real estate into a tenancy in common between herself and the ward. Thus, the undivided one-half interest in this real estate, worth not to exceed $31,000, became an asset in her estate. In February, 1954, before the appointment of the conservator, Mr. and Mrs. Jinkins discussed, by memoranda, the law pertaining to their respective rights in the property of the other in event of death. Mr. Jinkins then emphatically declared his intent to abide by the provisions of the Illinois statute relative to descent and distribution, and expressed the thought that Mrs. Jinkins should do likewise. Thus Mrs. Jinkins knew of his intentions in this respect, and the record does not indicate that she expressed her purpose to do other than abide by the statute. In view of these facts, we conclude that even under the rule of renunciation advocated by re-

spondents, the lower court erred in denying the petition to renounce.

The decree of the circuit court is reversed and the cause remanded with directions to enter a decree allowing the renunciation.

*Reversed and remanded, with directions.*