*In re* ESTATE OF FRANK GOODLETT, Deceased (Walter James, Ex'r of the Estate of Frank Goodlett, Deceased, Petitioner-Appellant, v. Ann Kent Goodlett, Respondent-Appellee).—*In re* ESTATE OF FRANK GOODLETT, Deceased (Ann Kent Goodlett, Petitioner-Appellant, v. Walter James, Ex'r of the Estate of Frank Goodlett, Deceased, Respondent-Appellee).

Second District   Nos. 2—91—0153, 2—91—0322 cons.

Opinion filed February 14, 1992.

Paul W. Kaiser, of Waukegan, for estate of Frank Goodlett.

Betty Burns Paden, of Evanston, for Ann Goodlett.

JUSTICE UNVERZAGT delivered the opinion of the court:

Walter James, Jr., executor of the estate of decedent Frank Goodlett, appeals from the judgment of the circuit court of Lake County granting Frank's widow, Ann Goodlett, her statutory share of Frank's estate. Ann Goodlett appeals from the lower court's order finding that she was not entitled to a surviving spouse's award. As both appeals arose from the same cause in the lower court, we have consolidated the two cases for purposes of appeal.

On March 19, 1980, Frank executed a will leaving his entire estate to his former wife, Lillian M. Goodlett, or, if she did not survive him, to her son, Walter James, Jr. (James). Lillian died in January 1984.

On July 4, 1985, Frank married Ann Kent in Waukegan. At the time of their marriage Frank was 82 years of age and suffering from kidney disease. Ann was 77. Frank died on December 25, 1985, in Portland, Oregon, leaving Ann as the only heir surviving him.

As the executor of Frank's will, James filed a petition for probate of the will and for letters testamentary on February 4, 1986. These documents were admitted to probate on that same date. On February 20, 1986, attorney Betty Burns Paden (Paden) filed her appearance and the appearance of Ann. On that same date Paden wrote Paul Kaiser, Jr. (Kaiser), attorney for James, inviting an offer from James for a quick buy out or settlement of Ann's interest in the estate prior to probate. In a letter dated February 24, 1986, Kaiser replied to Paden's offer, stating that he and James believed Ann was entitled to no more than her statutory share, which was offset by damage Ann had allegedly caused to a house owned by Frank. The house had been damaged considerably when water pipes froze after the gas had been turned off leaving the house without heat. James offered Ann $2,000 for her interest in the estate.

Paden replied to James' offer on March 5, 1986, stating that Ann denied any responsibility for damage done to the house and rejecting Kaiser's "meager" and "ridiculous" offer of $2,000 as Ann's share of

Frank's estate. Paden related that Ann "will wait until the house is sold for the fair market value."

On May 5, 1986, Paden filed a claim, signed by Ann, in the amount of $2,341.34 against the estate for funeral and other expenses paid by Ann. On that same date Paden wrote Kaiser of this claim and requested compensation. Ann's claim was scheduled for a hearing on July 18, 1986.

Prior to their court appearance on July 18, Kaiser and James met with Paden. According to Paden, James and Kaiser said they intended to give Ann her share of the estate. Paden related that James commented that he had boats and plenty of money and did not need to take money away from Ann. Paden stated that because the estate was small, Kaiser suggested the parties settle out of court. It was Paden's testimony that she subsequently spoke with Kaiser before the September deadline for filing for a renunciation and that they negotiated regarding Ann's statutory share.

In testimony given by James during his evidence deposition, James denied ever telling Paden at the July 18 meeting that he had plenty of money or that he had everything he needed and, therefore, did not need Frank's money. James stated that the only topic of conversation at the meeting was Ann's expense claim against the estate.

Kaiser's recollection of the July 18 meeting with Paden was that no conversation occurred concerning Ann's share of the estate nor was any agreement reached. Additionally, Kaiser testified that no renunciation of the will was mentioned and no discussion regarding waiver of the statutory requirements pertaining to renunciation occurred during any of his contacts with Paden.

At the July 18 meeting with Paden, Kaiser informed Paden that he no longer considered Ann responsible for the damage to decedent's house and that he had filed a suit against the North Shore Gas Company which, Kaiser believed, was responsible. Kaiser also told Paden that he and James considered some of the items listed in Ann's claim against the estate as not legitimate. When Paden and Kaiser appeared in court on July 18, the two attorneys presented their positions concerning Ann's claim. The court suggested the parties settle the claim for $1,000. Subsequently, the parties did agree to settle for that amount. Kaiser informed Paden that he would have an order entered in the amount of $1,000 and would send her a copy, which he did.

On August 1, 1986, James, as executor, received an offer to purchase Frank's damaged residence for $15,000. Having received a request from Kaiser that Ann agree to the purchase price, Paden wrote

Kaiser on August 13, 1986, asking Kaiser for a current appraisal on the property. Also, Paden advised Kaiser that Ann should be apprised of the lawsuit initiated by Kaiser against the gas company. On the same date Kaiser sent a copy of the real estate offer to Paden.

On August 18 and August 21, 1986, Kaiser wrote Paden requesting that she contact him regarding the prospective sale of the house and the lawsuit against the gas company.

On September 2, 1986, Paden wrote Ann informing Ann that, if she agreed, the estate would be settled out of court and Ann would receive the funeral expenses for Frank and her "widow's share of the estate." Paden told Ann that Frank's house was going to be sold, that the gas company was going to be sued for the damage to the residence, that the amount to be recovered would not be large, and that, therefore, it would be best to settle the estate out of court.

On September 30, 1986, Paden wrote Kaiser seeking a copy of the lawsuit against the gas company and a copy of the appraisal of the house which she had earlier requested. In a letter dated October 7, 1986, Kaiser enclosed a copy of the lawsuit and responded to Paden's appraisal request by explaining that he had not obtained an appraisal of the house because the sale had not occurred.

On March 25, 1987, Kaiser wrote Paden informing her that he needed to discuss litigation matters against the gas company with her and requesting that Paden contact him. On May 4 Paden wrote Kaiser conveying information she had received from Ann regarding Ann's dealings and conversations with the gas company regarding the damaged residence and Ann's availability to testify.

In June 1987, Kaiser learned that Ann had not filed a renunciation. Following a deposition in the lawsuit against the North Shore Gas Company, the attorney for the gas company made an inquiry regarding the identity of the interested parties in the estate. Kaiser explained that James was the sole beneficiary under the will and that Ann, as widow, possessed the right to renounce the will and receive a statutory one-half share of the estate. When asked if Ann had renounced, Kaiser replied that he assumed she had, as she had everything to gain and nothing to lose by renouncing. Later, Kaiser checked and discovered that Ann had not filed a renunciation. A month or two later Kaiser informed James, who had been out of town during this time, about the necessity for a timely filing of the renunciation and that Ann had not yet filed.

On September 11, 1987, Kaiser sent Paden a check for $1,000 in settlement of Ann's expense claim against the estate and a copy of James' final report as executor of Frank's estate to be filed on Sep-

tember 18. Ann filed a petition to vacate this final report which was allowed to stand as her objections to the report. That petition was later amended and filed on February 16, 1988.

On March 15, 1988, Robert Smith was allowed to file his additional appearance on Ann's behalf. On July 12, 1988, Ann by her attorneys Paden and Smith filed her objections to the executor's final report. Ann sought her statutory share of the estate and blamed her failure to file a renunciation of decedent's will on the actions and negotiations of the executor's attorney in leading Ann to believe that she would receive her share. In his reply to Ann's objections, James admitted that he refused to pay Ann the share she would have been entitled to had she renounced the will as provided by statute. On April 3, 1990, Ann filed a renunciation.

Also on April 3, Ann filed an application for surviving spouse's award. (Ill. Rev. Stat. 1989, ch. 110½, par. 15—1.) James moved to deny Ann's application for surviving spouse's award, asserting that prior to his death Frank had changed his domicile from Illinois to Oregon and that, therefore, at the time of his death Frank was not a resident of Illinois (as required under section 15—1 of the Probate Act of 1975). On May 16, 1990, the trial court denied Ann's application for surviving spouse's award, finding that Frank was domiciled in Oregon when he died. Subsequently, Ann moved to vacate this judgment.

Following a hearing on September 24, 1990, the trial court denied Ann's motion to reconsider the court's disallowance of her surviving spouse's award. The court did grant, however, Ann's petition for her statutory share of the estate, finding that because the negotiations and discussions between Paden and Kaiser were pursued with the idea that Ann would share in the estate, James was estopped from precluding Ann from taking her share based on her failure to timely renounce. In an amended order, entered December 18, 1990, the court made additional findings *nunc pro tunc* as of September 24, 1990. On January 14, 1991, the court denied James' motion to vacate these prior orders.

On February 1, 1991, James filed a notice of appeal, praying that the lower court's orders of September 24, 1990, December 18, 1990, and January 14, 1991, be reversed. On February 22, 1991, Ann moved to dismiss James' appeal based on Supreme Court Rule 309 (134 Ill. 2d R. 309). The trial court denied Ann's motion, finding that Ann had no standing to present a motion pursuant to Supreme Court Rule 309.

On March 19, 1991, Ann filed a notice of appeal from the trial court's findings of May 16, 1990, and September 24, 1990, denying

her a surviving spouse's award. We, however, find that we have no jurisdiction to hear Ann's appeal.

Illinois Supreme Court Rule 303(a)(3) provides:

"If a timely notice of appeal is filed and served by a party, any other party, within 10 days after service upon him, or within 30 days of the entry of the order disposing of the last pending post-trial motion, whichever is later, may join in the appeal, appeal separately, or cross-appeal by filing a notice of appeal, indicating which type of appeal is being taken." (134 Ill. 2d R. 303(a)(3).)

█ In the instant case Ann was served with notice of the executor's appeal on February 4, 1990. Ann filed her separate appeal on March 19, 1990. As is readily apparent from this filing date, Ann's notice was not filed within 10 days after service upon her of the executor's notice of appeal. To be timely filed, therefore, Ann's petition must have been filed within 30 days of the entry of the order disposing of the last pending post-trial motion. Here, that order occurred on January 14, 1991, when the court denied the executor's motion to vacate the court's prior September 24, 1991, and December 18, 1991, orders finding that Ann was entitled to her statutory share of the estate. These prior orders also denied Ann's motion for reconsideration of the denial of a surviving spouse's award. Ann, however, failed to file her notice of appeal within 30 days of the entry of the January 14 order, the last pending post-trial motion in the instant case.

Although both James and Ann filed motions after the January 14 order, neither motion constituted a post-trial motion. Ann's motion was a motion to dismiss James' appeal. The motion, however, cannot be considered a post-trial motion. A post-trial motion must be one which specifically requests one or more of the statutorily authorized types of relief consisting of rehearing, retrial, modification or vacation of the judgment. (*Lewis v. Loyola University* (1986), 149 Ill. App. 3d 88, 92.) Ann's motion to dismiss the appeal failed to specify any of these forms of relief. Rather, the only relief requested was dismissal of James' appeal. Thus, the motion could not be deemed a post-trial motion.

Parenthetically, Ann's request for dismissal was inappropriately based on Supreme Court Rule 309 (134 Ill. 2d R. 309). Supreme Court Rule 309 allows dismissal of an appeal by the party bringing the appeal, James in this instance, or on stipulation of the parties. Neither of those situations occurred here.

Even if, however, Ann's motion to dismiss the executor's appeal were considered a post-trial motion, we would not have jurisdiction

because the motion, filed on February 22, 1991, and later amended on February 27, 1991, was not brought within 30 days of the January 14, 1991, judgment disposing of the case.

In her motion to dismiss the executor's appeal Ann stated that the executor had not yet filed a final amended report within 45 days of January 14, 1991, as required by the trial court's order of that date. Subsequent to Ann's motion to dismiss, James filed, on March 5, 1991, a motion to stay proceedings, *i.e.*, to stay the filing of the final account of the estate pending appeal. The trial court ordered that stay on March 11, 1991. Orders entered by a trial court after the filing of a notice of appeal are valid if substantive issues on appeal are not affected and if the nature of the appeal is not altered. (*Homeowners Organized to Protect the Environment, Inc. v. First National Bank* (1988), 167 Ill. App. 3d 714, 720.) Here, the order staying the enforcement of the judgment was a matter arising independent of and collateral to the court's judgment and did not affect the issues on appeal or change the nature of the appeal. James' motion to stay the court's final order did not attack the final judgment but, rather, asked the court to stay enforcement of the order pending appeal. Thus, the motion was not a post-trial motion for purposes of extending the time for filing a notice of appeal until entry of the order disposing of the motion.

Ann's March 19, 1991, notice of appeal, therefore, was not brought within 30 days of the court's order disposing of the last pending post-trial motion, as that order was entered on January 14, 1991, and not on February 27, 1991, when the court denied Ann's dismissal of James' appeal, or on March 11, 1991, when the court stayed the probate proceedings pending appeal.

Failure to file a timely notice of appeal is jurisdictional, and it is not within this court's authority to overlook Ann's failure to comply with the rules of civil procedure. (*Kotalik v. Jensen* (1990), 201 Ill. App. 3d 838, 842.) Ann's failure to comply with the requirements of a timely notice of appeal requires us to dismiss her appeal for lack of jurisdiction. This court is, however, not deprived of its jurisdiction to review the issues raised by James in his appeal. His notice of appeal was timely filed on February 1, 1991, within 30 days of the entry of the court's January 14, 1991, order disposing of the last pending post-trial motion, *i.e.*, James' post-trial motion to vacate and set aside the court's order of September 24, 1990, and amended order of December 18, 1990.

In regard to his appeal, James has filed in this court a motion to strike portions of Ann's brief, which James alleges pertain to mat-

ters extraneous to the record. It is James' position that James' counsel, Paul Kaiser, and Ann's additional counsel, Robert Smith, agreed that certain documents referred to in Ann's brief were superseded by subsequent documents filed with the court and that the court was informed of this agreement. According to James, these superseded documents should not have been included in the common-law record and were not among those specifically requested by Kaiser for inclusion in the record. Ann has filed objections to James' motion to strike, and we ordered the motion and objections to be taken with the case.

Supreme Court Rule 321 (134 Ill. 2d. R. 321), which pertains to the contents of the record on appeal, provides in relevant part:

> "The record on appeal shall consist of the judgment appealed from, the notice of appeal, and the entire original common law trial court record, unless the parties stipulate for, or the trial court, after notice and hearing, or the reviewing court, orders less." (134 Ill. 2d R. 321.)

Thus, unless the parties stipulated for less than the entire common-law record to be included as the record on appeal, or the trial court orders less, the original common-law trial court record will be transmitted to the reviewing court as part of the record on appeal. 134 Ill. 2d R. 321, Committee Comments.

Here, no evidence exists in the record that the trial court ordered less or that the parties stipulated for less. Although James maintains that Ann's counsel, Smith, agreed that certain documents superseded others filed with the case, the affidavit to this effect (prepared by attorney Kaiser) was never signed by Smith. Additionally, the trial court's orders pertaining to the merits of this appeal demonstrate that the court, in reaching its decisions, considered the documents which James alleges should have been excluded from the record on appeal. Thus, James has provided no evidence that the court ordered less or that the parties stipulated for less than the transmission of the entire original common-law record to this court. We, therefore, deny his motion to strike those portions of Ann's brief referring to documents which James maintains should not have been included in the record on appeal. We now proceed to a discussion of James' issues and our disposition thereof.

■ On appeal, James argues the trial court erred in finding that he was estopped from asserting that the time-limiting provisions of section 2—8(b) of the Probate Act of 1975 (the Act) (Ill. Rev. Stat. 1989, ch. 110½, par. 2—8(b)) barred Ann's right to a statutory share of Frank's estate. Section 2—8(b) of the Act provides:

"In order to renounce a will, the testator's surviving spouse must file in the court in which the will was admitted to probate a written instrument signed by the surviving spouse and declaring the renunciation. The time of filing the instrument is: (1) within 7 months after the admission of the will to probate or (2) within such further time as may be allowed by the court if, within 7 months after the admission of the will to probate or before the expiration of any extended period, the surviving spouse files a petition therefor setting forth that litigation is pending that affects the share of the surviving spouse in the estate. The filing of the instrument is a complete bar to any claim of the surviving spouse under the will." Ill. Rev. Stat. 1989, ch. 110½, par. 2—8(b).

James maintains the time-limiting provision of section 2—8, requiring a surviving spouse to file a renunciation of a will within seven months after the admission of the will to probate, is not an ordinary statute of limitations. Rather, James asserts, the provision is jurisdictional because the time limitation goes to the existence of the right itself and is, therefore, not subject to tolling by the doctrine of estoppel. Conversely, Ann argues that the time limitation constitutes a statute of limitations instead of a jurisdictional prerequisite and that, under appropriate circumstances, equitable tolling, waiver, and estoppel are available to excuse or extend the filing time.

In *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, our supreme court set forth the significant distinction which exists between statutes of limitations and statutes that both confer jurisdiction on a court and fix a time within which such jurisdiction may be exercised. The court stated:

"Statutes of limitation only fix the time within which the remedy for a particular wrong may be sought. [Citation.] They 'are procedural in nature [citations] and are not designed to alter substantive rights ***.' *Wilson v. Bishop* (1980), 82 Ill. 2d 364, 373.

On the other hand, 'statutes which create a substantive right unknown to the common law and in which time is made an inherent element of the right so created, are not statutes of limitation.' (*Smith v. Toman* (1938), 368 Ill. 414, 420.) Such a time period 'is more than an ordinary statute of limitations' (*North Side Sash & Door Co. v. Hecht* (1920), 295 Ill. 515, 519); it 'is a condition of the *** liability itself and not of the remedy, alone. *** It goes to the existence of the right itself.' (295 Ill. 515, 519-20.) Such a provision is a condition precedent to the plain-

tiff's right to seek a remedy. [Citations.] Such statutes set forth the requirements for bringing the right to seek a remedy into existence. They do not speak of commencing an action after the right to do so has accrued. They are jurisdictional, not mandatory." 109 Ill. 2d at 209-10.

Our research has revealed several cases in which the courts have found that the time requirement of section 2—8(b) is mandatory. In *In re Estate of Rosene* (1978), 66 Ill. App. 3d 999, a widow failed to file a renunciation within the statutory period although she knew of her right to renounce and was apparently not defrauded by the executor or relatives of the decedent. This court found no basis upon which to extend the statutory seven-month limitation and held that the provisions of section 2—8(b) are mandatory, not directory. 66 Ill. App. 3d at 1001.

Likewise, in *In re Estate of Duncan* (1988), 171 Ill. App. 3d 594, the court stated that the provisions of section 2—8 governing renunciation are mandatory, not directory, and that the trial court does not have discretion to deviate from the statutory prescriptions therein. Accordingly, the court found that appellee's failure to renounce the will within the seven-month statutory period acted as an acceptance of the terms of the will. 171 Ill. App. 3d at 598-600.

Because section 2—8(b) speaks of commencing an action of renunciation after the right to do so has occurred by the admission of the will to probate, we believe it is procedural in nature and not designed to alter a spouse's substantive right to elect whether to take under the will or to renounce. The seven-month reference in section 2—8(b) merely refers to a time frame from which to commence the running of a limitation period, *i.e.*, from the admission of the will to probate, and to the duration of that time, *i.e.*, seven months. As such, the time limitation of section 2—8(b) does not constitute a condition precedent to the spouse's right to renounce but merely fixes the time within which she can exercise that right. We conclude, as we did in *Rosene*, that the time period of section 2—8(b) is mandatory and find that it should be treated as a statute of limitations.

■ As concepts of equitable estoppel, tolling, and waiver usually apply to statutes of limitations (*Larrance v. Human Rights Comm'n* (1988), 166 Ill. App. 3d 224, 232-33), we next determine whether the circumstances here justify the application of any of these equitable doctrines.

Ann maintains that she and her attorney, Paden, were misled by the conduct of James and his attorney, Kaiser, into believing that James intended Ann to receive her statutory share of the estate.

Specifically, Ann argues that the correspondence and telephone calls that transpired between Paden and Kaiser led her to believe that James planned to give Ann her statutory share of the estate and that it was, therefore, unnecessary for her to file a timely renunciation of the will for her to receive that share. Those same letters and phone calls, however, also reflect Kaiser's belief, albeit mistaken, that Ann had filed a timely renunciation. In her initial letter of February 20, 1986, to Kaiser, Paden wrote:

"As you know, Mrs. Goodlett is entitled eventhough [sic] she is not named in the will. What do you want to do? Do you want to work something out currently or move along in the Court?"

In response, Kaiser accused Ann in his letter of February 24, 1986, of being responsible for damage which occurred to a house owned by Frank. (Kaiser later discovered that the North Shore Gas Company was at fault and sued it for the damage.) In his February 24 letter Kaiser referred to the diminution in "the value of Mrs. Goodlett's share of the property" (as a result of damage to the property) and that "my client [James] and I are of the view that she is entitled to no more than her statutory share, which is offset by the damage which my client has suffered by reason of her negligence." In so stating, Ann asserts that Kaiser acknowledged that she was entitled to her statutory share of Frank's property.

Indeed, Kaiser did acknowledge that fact, but nothing more. It cannot be said that by such an acknowledgment Kaiser induced Ann not to file a renunciation. Rather, we believe from the tone of Paden's February 20 letter that it could be equally said that she misled Kaiser into assuming that Ann was aware of her right to renounce Frank's will and had filed, or would be soon filing, a renunciation.

It was Paden's testimony at a hearing conducted on the renunciation issue that when she met with Kaiser and James on July 18, 1986, prior to a hearing on a claim Ann had against the estate, both men stated that they were going to give Ann her share of the estate. According to Paden, Kaiser suggested that the parties settle the matter out of court since the estate was so small. Additionally, at the meeting Kaiser told Paden he was going to sue the North Shore Gas Company (for damage to Frank's house). Paden stated that after this meeting she had several conversations with Kaiser regarding Ann's claim against the estate and Ann's share (of the estate). Paden testified that she understood Ann's "share" to mean what the statute (section 2—8) allowed her, *i.e.*, one-half of the estate.

Conversely, Kaiser testified that during Paden's meeting with James and him, no conversation occurred concerning Ann's share of

the estate or renunciation of Frank's will. According to Kaiser, the conversation centered on Ann's expense claim against the estate. Kaiser told Paden that he and James considered some of the items listed in her claim as not legitimate. Subsequently, the two attorneys appeared in court and presented their positions regarding Ann's claim. The court suggested the parties settle the claim for $1,000. Correspondence in the record shows the parties later agreed to this settlement.

The testimony given by James during his evidence deposition supported Kaiser's statement that the topic of conversation at the July 18 meeting was Ann's expense claim against the estate. James emphatically denied that any conversation concerning Ann's share of the estate occurred during this meeting.

Although the testimony of the attorneys was conflicting regarding the July 18 meeting, our review of that testimony, of James' testimony at the evidence deposition, and of the correspondence which occurred between the attorneys fails to convince us that Ann was misled or defrauded in any way by Kaiser or James into believing that she was not required to file a renunciation to claim her statutory share of Frank's estate. From the time Frank's will was admitted to probate, Ann was represented by an attorney, and any fault in Ann's failure to file a timely renunciation should be attributed to Ann and her attorney.

Under our previous finding in *Rosene*, we find that the statutory seven-month limitation set forth in section 2—8(b) is mandatory and that the trial court did not have discretion to deviate from that statutory prescription and apply equitable principles of estoppel where, as here, the widow was not defrauded by the executor or his attorney. Accordingly, the trial court erred in allowing Ann's untimely renunciation of Frank's will.

For the reasons stated above, the judgment granting Ann her statutory share of Frank's estate is reversed. Ann's appeal for application for a surviving spouse's award is dismissed.

No. 2—91—0153, Reversed.
No. 2—91—0322, Dismissed.

DUNN and BOWMAN, JJ., concur.