2018 IL App (1st) 172073

No. 1-17-2073

Opinion filed September 28, 2018

Fourth Division

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| *In re* ESTATE OF JAMES F. CERAMI, Deceased | ) |
| | ) Appeal from |
| | ) the Circuit Court |
| | ) of Cook County |
| (SALVATORE CERAMI, | ) |
| | ) |
| Executor-Appellant, | ) |
| | ) 2014 P 4936 |
| v. | ) |
| | ) |
| CHRISTINA CERAMI, | ) Honorable |
| | ) James G. Riley and |
| Claimant-Appellee). | ) Susan M. Coleman, |
| | ) Judges Presiding |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Gordon and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    The executor, Salvatore Cerami (Executor), appeals from the denial of his section 2-619

(735 ILCS 5/2-619 (West 2014)) motion to dismiss the renunciation of will filed by claimant,

Christina Cerami, in the Estate of James F. Cerami, deceased.

¶ 2    The record shows that Christina and James were married for almost 20 years, until James

died on January 16, 2013. James was survived by three children from a previous marriage—

Salvatore, Lawrence, and Dora Ann.

¶ 3    On August 14, 2013, Christina opened a probate estate and filed a petition for letters of

administration in the circuit court. Exhibit A to the petition stated that a "will dated April 13,

1993, apparently executed by the Decedent, James F. Cerami, was filed with the Clerk of the Circuit Court of Cook County" on February 4, 2013, but that Christina "at this time does not have sufficient information with which to make any determination regarding the validity of this will of the Decedent."

¶ 4    On January 15, 2015, Christina filed a claim against her husband's estate for an amount to be determined, in excess of $100,000. She sought compensation for "Custodial Care" pursuant to section 18-1.1 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/18-1.1 (West 2014)) and "common law" and raised a claim "for share of earnings and benefits—Breach of premarital agreement." Christina stated that the parties had entered into a premarital agreement and contended that she had "not received all that she is entitled to under and/or in accordance with the premarital agreement, including *** income earned during marriage and survivor benefits on any pension, profit-sharing, or retirement plan or account."

¶ 5    Pursuant to the June 7, 1993, premarital agreement, which is included in the record, the parties waived their claims and interests in various property and assets of the other party and agreed on how to separate their assets in the event of divorce or death. Specifically, James agreed to "name CHRISTINA as the person entitled to receive any survivor benefits to which he is or may be entitled as a result of having an interest in any pension, profitsharing, or retirement plan or account." He also agreed to "maintain a life insurance policy on his life in an unencumbered amount not less than $100,000 naming CHRISTINA the sole beneficiary thereunder so long as the parties remain married." The parties agreed to "file State and Federal tax returns as joint or married filing separate, whichever shall create the lesser total tax liability," and agreed to waive certain probate rights, including their rights "to renounce, to elect to take against, or to contest" the other party's will.

¶ 6    On January 30, 2015, James's son, Salvatore, moved to dismiss Christina's letters of administration pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)), arguing that, in the premarital agreement, Christina had waived her right to serve as administrator of James's estate. On February 26, 2015, the court entered an order denying Christina's custodial care claims, and granting Salvatore leave to file a cross-petition for probate of will. Salvatore did so on March 24, 2015. Two days later, on March 26, 2015, James's will—dated April 13, 1993—was admitted to probate, and Salvatore was appointed as independent executor of the estate.

¶ 7    On April 23, 2015, Christina filed an "Amended Claim for Share of Earnings and Benefits Due to Breach/Unenforceability of Premarital Agreement." Christina asked the court to reconsider her custodial claim because "[f]or the last five years of their marriage, CHRISTINA sacrificed a successful career to care for JAMES full time" and the "circumstances in hindsight raise an 'issue of unconscionability' " regarding the provision of the premarital agreement disallowing such a claim. Christina further contended that James had breached the premarital agreement in a number of ways, including that he failed to name her "as the person entitled to receive survivor benefits" on his "pension, profit-sharing or retirement plan or account"; that he filed "Married Filing Separately" tax returns, despite the fact that filing jointly would have created a lesser tax burden; and that he failed to maintain a life insurance policy, naming her as the sole beneficiary. Christina requested that the court either (1) declare the premarital agreement unenforceable against her or (2) order various documents to be turned over to her so that "forensic accounting c[ould] be conducted."

¶ 8    Thereafter, the parties engaged in extensive litigation regarding Christina's claims, including additional briefing and four days of evidentiary hearings and arguments. The court

found that James breached the premarital agreement in several ways, including by failing to name Christina as the beneficiary on two of his retirement accounts, by failing to name her as the sole beneficiary of his $500,000 life insurance policy, and by filing tax returns "married filing separately," when filing jointly would have created a lesser tax liability.

¶ 9     On various occasions during hearings on Christina's claims, the court expressed concern about how to calculate damages, and whether, as a result of James's many breaches, the court should "take the entire premarital agreement and throw it out the window." During a hearing on July 7, 2016, the court noted that Christina waived "her probate rights" in the premarital agreement, and that if the court "thr[e]w out the premarital agreement, she now is a spouse. She has a right to renounce the will."

¶ 10    On August 29, 2016, the following exchange occurred:

"THE COURT: *** if the person died married, the probate act tells us what rights the spouse has. This probate act enacted in Illinois and at the time of James' death says she was the spouse, she's entitled to inherit from her husband, and it sets forth a formula of how she can inherit, either by will, but no less than her intestate share. And she can renounce the will and take her one-third, and she has rights to a spousal claim. The probate act tells me what to do with spouses' rights and that comes out of the other spouse's, the deceased spouse's estate. In this case I don't get that because they both signed a premarital agreement that waived their right to probate claims, and then this breach happens five, six different times. So what's the benefit to Christina of executing a premarital agreement where she waives all of her probate rights, only to have her spouse violate and breach the premarital agreement?

4

COUNSEL FOR THE EXECUTOR: Sure. So—

THE COURT: She's getting it on both sides. You're saying it's not marital property, she can't have it, and you're saying there's a premarital agreement, she can't take the probate property. But she's got to be entitled to something somewhere, either the premarital agreement's not valid and she takes her probate rights or the premarital agreement is valid and she only gets those rights. But now James breaches it over and over and over and over again, to the point this is now our fourth or fifth day of trial and we still can't figure out how many breaches there are.

COUNSEL FOR THE EXECUTOR: Well, I can count them up.

THE COURT: But you want me to hold her to her giving away her probate rights.

COUNSEL FOR THE EXECUTOR: No, no.

THE COURT: So you want her to have her probate rights, you want her to be able to renounce the will, you want her to take her statutory share, you want her to have her spousal claim?

COUNSEL FOR THE EXECUTOR: No, I don't want that.

THE COURT: All right.

COUNSEL FOR THE EXECUTOR: I want the agreement to be enforced. Christina should get what she was promised, nothing more or nothing less.

THE COURT: Well, how do I enforce this agreement that James has breached a half dozen times?

* * *

5

That seems to be the whole problem with this case. You want James to be able to breach it at any drop of a hat and then hold Christina to she's waived her probate rights.

* * *

I don't know how to calculate the damages. I've been trying for six months to come up with a scheme to calculate the damages and I can't do it. But something's going on here. Marital money was diverted to the IRS. Why I don't know, at a time that this agreement says you shall file joint returns. So what's the benefit of that breach? The same—you know, I don't know what to do *** other than toss out the entire agreement, as if it never existed."

¶ 11    The court then ordered the parties to submit additional briefing on damages stemming from James's failure to file joint tax returns, with proposed findings of facts and calculations of damages.

¶ 12    The parties submitted their proposals on September 19, 2016, with Christina proposing approximately $300,000 in damages for that breach, representing the difference in tax liability that would have been owed by the parties had they filed jointly, plus statutory interest. The Executor argued that no damages existed, because James paid his taxes out of his own funds and Christina would not have benefitted from the money James would have saved by filing jointly. In the alternative, the Executor stated that if the court decided that "nominal damages" were appropriate, he suggested the amount of $10,000.

¶ 13    The court heard argument from the parties on September 22, 2016. Counsel for the Executor argued that Christina had not adequately established damages from James's breaches, and accordingly, only "nominal damages" should be awarded. The following exchange occurred:

"THE COURT: So, you're—so, to paraphrase it in the light most unfavorable to you—

COUNSEL FOR THE EXECUTOR: Okay.

THE COURT: —James has a right to go out and breach the premarital agreement anytime, any way he sees fit, and then thumb his nose at us, saying, 'Ha-ha. You can't calculate any damages, but I get to enforce the prenup as [*sic*] against you.'

COUNSEL FOR THE EXECUTOR: So, two responses to that. First of all, breach of contract is not a tort. Punitive damages are not available. The damages for contract is what the resultant damages to the party are. So, if someone breaches a contract, the damages are the amount that puts the plaintiff in the same position, not punishing them for breach of the contract.

THE COURT: All right. So how do I put my plaintiff, then, in the same position? Do I give her her right to renounce the will? Do I give her her right to ask for a widow's award? Do I give her a right, then, to file a custodial care claim act?

COUNSEL FOR THE EXECUTOR: So—

THE COURT: Would that put her in the position?

COUNSEL FOR THE EXECUTOR: —under—under Wilson, it suggests that if damages haven't been shown, that there be nominal damages, and my brief suggests $10,000 to be an appropriate award of nominal damages."

¶ 14    After the conclusion of argument, the court ruled:

7

"THE COURT: I want to read something into the record from the prenup at page 3 in the beginning paragraph in the preamble. It says, 'Now, therefore, in anticipation of the planned marriage of the parties and their aforesaid desires and their joint and mutual willingness to accept the provisions of this agreement in lieu of, and in full discharge, settlement and satisfaction of the rights and claims specified herein, and in consideration of the premises of the marriage,' etc. This is day 3 or day 4 of trial. *** We have found breach of this premarital agreement regarding the annuities. We have found breach of the premarital agreement regarding the joint tax return filings. We have found breach of disagreement [*sic*] regarding the insurance provisions.

In 20 years on the bench, I can't remember a single case that has bothered me more than this premarital agreement. The Estate wishes to fully enforce everything that they have against the wife and use this premarital agreement as an absolute sword to preclude her from taking any probate issue whatsoever. It stops her from renouncing, it stops her from taking her custodial share or statutory custodial claim, and it stops her from taking her spousal claim; yet I have nothing but three days of trial of breach, breach, breach, breach, breach by James. And it says 'willingness to accept the provisions of this agreement.' I don't think James ever was thought to be bound by this agreement. We've been sitting here in the middle of trial, I've continued the case for briefs on damages. It's almost—almost—impossible to the prove damages, although we've proven breach.

I'm taking the very unusual step at this time. I'm declaring the entire premarital agreement as void. Void, because it was illusory on behalf of James.

And I'm establishing all rights left unto the wife to do as she sees fit underneath the Probate Act. This shall be immediately appealable. No just reason to enforce—or, to delay enforcement. That's my order today.

\* \* \*

—I'm holding void the entire premarital agreement, and you can appeal my decision.

\* \* \*

She's entitled to file her renunciation. She's entitled to file her spousal claim. She's entitled to file a spousal award.

COUSEL FOR CHRISTINA: Your Honor, could we set some sort of a timetable for a status as to that?

THE COURT: It would have to be after 30 days, because I don't know if you guys, one of you, are going to take an appeal or not. So, we'll see what happens with the appeal."

¶ 15    The court then entered the following written order:

"The Premarital Agreement dated June 7, 1993 \*\*\* is set aside and is not valid, illusory and void. Any orders arising out of the Premarital Agreement are also vacated. The decedent's spouse, Christina M. Cerami shall be allowed to file for all things allowed by spouses, including but not limited to spouse allowance, statutory share and custodial care claims, renunciation of will. \*\*\* There is no just reason for delay of enforcement, and this matter is immediately appealable under 304(a)."

¶ 16    On October 13, 2016, the Executor filed a motion for extension of time to file a postjudgment motion to allow the Executor to review transcripts that had been ordered but not yet received. The court granted that motion, and allowed the Executor an additional 30 days to file a postjudgment motion. The Executor, however, ultimately did not file a postjudgment motion, or a notice of appeal from the September 22, 2016, order.

¶ 17    Thereafter, the trial judge who had presided over this matter—the Honorable James G. Riley—retired, and the matter was later assigned to the Honorable Susan M. Coleman.

¶ 18    On January 24, 2017, approximately four months after the court's order of September 22, 2016, Christina filed a "Spouse's Award" claim and a "Renunciation of Will," both of which were signed "by and through her attorney." On February 7, 2017, Christina filed an amended custodial care claim.

¶ 19    On May 16, 2017, the Executor filed answers to the amended custodial care and spouse's award claims, and moved to dismiss Christina's renunciation of will pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2016)). The Executor contended that Christina's right to renounce the will was "barred by statute of limitations" because, pursuant to section 2-8 of the Probate Act (755 ILCS 5/2-8(b) (West 2016)), a renunciation or petition for extension must be filed within seven months after the admission of the will to probate. The Executor requested that the court dismiss her renunciation "with prejudice for failure to file the Renunciation of the Will within the statutory time period under the Illinois Probate Act § 2-8(b)." The Executor also argued, "[i]n the alternative," that the renunciation was not personally signed by Christina, and prayed that the court dismiss her renunciation "with leave to refile."

¶ 20    Christina responded to the Executor's Motion to Dismiss her renunciation on May 31, 2017. Christina contended that the September 22, 2016, order "explicitly allow[ed]" her to renounce the will, and that the Executor had not appealed that order. She asserted:

"[I]f SALVATORE felt that this Court's Order of September 22, 2016 was in need of interpretation or modification for the rights of the Estate to be preserved, SALVATORE had ample time and opportunity to avail himself through the correct procedural avenues, whether by asking Judge Riley for clarification during either of the two post-trial hearings held on the status of SALVATORE's possible appeal, by moving this Court to reconsider its order, or by taking matter to appeal after receiving leave to file and a 30-day extension thereto."

¶ 21    Christina also argued that she could not file a renunciation sooner because any attempt to "file for a renunciation prior to the September 22, 2016 Order would have been a violation of the Premarital Agreement." She further claimed that she "relied on the representations made in the Premarital Agreement by JAMES to her detriment" and that "therefore, the statute of limitations should be tolled for the period under which CHRISTINA was barred from exercising her right to renunciation." Christina asserted that "equitable principles must allow CHRISTINA the same advantages she would have enjoyed but for the [c]ourt's reliance on the Premarital Agreement which has now been held to be void as to CHRISTINA." Regarding the lack of signature, Christina contended that her attorney signed the renunciation as her agent, but "[c]onsidering that the only relief that SALVATORE prays for pursuant to this part of his Motion is for CHRISTINA to sign and refile her Renunciation, CHRISTINA would be willing and able to sign said Renunciation if and in the manner that would please this Court."

¶ 22   On July 20, 2017, after hearing the parties' arguments on the Executor's motion to dismiss, the court stated:

"[T]his court has heard the arguments of counsel and read the motions and the responses that were filed. What is most telling to this court and most persuasive is the fact that on September 22nd, 2016 there was an order that was entered by the trial court. And this court is not an Appellate Court. I do not review other judge's [*sic*] orders.

The law of this case was entered on September 22nd, 2016 with regards to the premarital agreement that had been apparently entered into between the decedent and his then spouse. And the court in its order said, and I quote, The premarital agreement dated June 7, 1993 *** is set aside and is not valid, illusory and void. Any orders arising out of the premarital agreement are also vacated.

The decedent's spouse, Christina Cerami, shall be allowed to file for all things allowed by spouses, including but not limited to, spouse allowance, statutory share, custodial care claims, renunciation of will.

The order included the renunciation of will. It's dated September 22nd, 2016. The renunciation was filed within seven months. Finally, there's language in the order of September 22nd. There is no just reason for delay of enforcement of this matter. And this matter I'm sorry—delay of enforcement. And this matter is immediately appealable under 304(a).

So I'm not the reviewing court. The judge found that the premarital agreement was void and—and allowed the spouse to file for renunciation of will. That's the law of the case. The order is still in force and effect.

12

The motion to dismiss is denied based upon the court's order—that court's order.

¶ 23 The court then entered a written order that denied the Executor's "Motion to Dismiss Renunciation of Last Will by Section 2-619 (5) Statute of Limitations *** for the reasons stated on the record."

¶ 24 On August 21, 2017, the Executor filed his notice of appeal from the July 20, 2017, order. In this court, the Executor contends that the trial court erred in denying his motion to dismiss Christina's renunciation of will because the renunciation was untimely and because it was not personally signed by Christina. In response, Christina contends that this court lacks jurisdiction to consider this appeal and, alternatively, that the trial court properly denied the motion to dismiss because equitable tolling should apply to permit her to file a renunciation beyond the seven-month time frame. Christina further contends that the Executor has waived consideration of the lack of personal signature because he failed to argue it at the hearing and because he has cited "no case law indicating that an attorney may not act as an agent and sign for her client."

¶ 25 The parties disagree about the standard of review applicable to this matter. The Executor contends that the court denied his section 2-619 motion to dismiss without an evidentiary hearing, and accordingly, this court should review the denial under a *de novo* standard of review pursuant to *In re Estate of Mondfrans*, 2014 IL App (2d) 130205. Citing *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, the Executor further contends that this appeal requires this court to construe a statute and, thus, the appropriate standard is *de novo*. Christina, however, asserts that the denial of a section 2-619 motion to dismiss is generally not reviewable, since it is not a final order. However, in the rare cases where such a denial is reviewed, the court must

examine the facts and apply the manifest weight of the evidence standard to determine whether the facts presented require reversal. *In re Estate of Silverman*, 257 Ill. App. 3d 162, 168-69 (1993). We conclude that we need not determine the applicable standard of review, because the result would be the same under either standard.

¶ 26    However, before we address the issues raised in this appeal, we must first determine whether this court has jurisdiction to rule upon those issues. According to the "Statement of Jurisdiction" in the Executor's brief, this court has jurisdiction to consider this appeal pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016).

¶ 27    Christina first contends that we lack jurisdiction because the Executor "does not have the type of interest that would entitle him to appeal," citing *In re Estate of Vogt*, 249 Ill. App. 3d 282, 286 (1993), for the proposition that "an executor may not appeal from an order granting or denying a partial distribution, since the executor does not have the type of interest that would entitle him to appeal." The Executor replies that he is "not appealing an order granting or denying a partial distribution" and is, instead, "appealing the denial of a motion to dismiss a renunciation of Will." The Executor also points out that several Illinois courts have previously heard the appeals of executors challenging the validity of a purported will renunciation pursuant to section 2-8 of the Probate Act and that "[i]n none of the previous cases did the appellate courts ever question the standing of an executor as an interested party to the attempted renunciation." We agree with the Executor.

¶ 28    Section 2-8 of the Probate Act (755 ILCS 5/2-8 (West 2014)) provides for the renunciation of a will by the testator's surviving spouse and the spouse's entitlement to one-third of the testator's estate when the testator leaves a descendant. "The purpose of *** creating the right of a spouse to renounce the provisions of the will and setting forth the methods of its

14

accomplishment, is to enable the spouse to elect which method of taking would be most advantageous to him or her." *First National Bank of Danville v. McMillan*, 12 Ill. 2d 61, 66 (1957). Upon a surviving spouse's renunciation of the will, it is the duty of the executor to defend the estate. *In re Estate of Pollack*, 28 Ill. App. 3d 987, 990 (1975). An agreement entered into between the decedent and his or her surviving spouse may be raised as a defense to renunciation. *Id.*; see also *Golden v. Golden*, 393 Ill. 536, 539-40 (1946).

¶ 29    Because it is an executor's duty to defend the estate upon a surviving spouse's renunciation, an executor clearly has an interest that entitles him to appeal a trial court's decision denying the estate's challenge to a renunciation. See *In re Estate of Rosene*, 66 Ill. App. 3d 999, 1002 (1978) (reversing the trial court's order denying the executor's petition to disallow the renunciation of decedent's will, upon appeal from the executor); *In re Estate of Goodlett*, 225 Ill. App. 3d 581, 592 (1992) (reversing the trial court's order allowing renunciation, where the executor appealed, arguing that the renunciation was not timely filed); *In re Estate of Reighard*, 402 Ill. 364, 369-70 (1949) (considering the appeal of the executor-trustee of the will, which challenged the circuit court's order directing the conservator to renounce the will on behalf of his ward, the incompetent widow of the testator). Accordingly, we conclude that the Executor has standing to appeal the order denying his motion to dismiss Christina's renunciation.

¶ 30    Christina also contends that this court lacks jurisdiction because the July 20, 2017, order did not "finally determine[ ] a right or status of a party" under Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), the authority upon which the Executor premises this court's jurisdiction.

¶ 31    As an initial matter, we note that our jurisdiction is limited to the review of appeals from final judgments, unless otherwise permitted under the Illinois Supreme Court Rules or by

statute. *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989); see also *Puleo v. McGladrey & Pullen*, 315 Ill. App. 3d 1041, 1043 (2000) ("Appellate jurisdiction is restricted to reviewing final judgments unless the order to be reviewed comes within one of the exceptions for interlocutory orders specified by our supreme court."). " 'An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.' " *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008) (quoting *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)). A judgment is final if it "fixes absolutely and finally the rights of the parties in the lawsuit *** [and] determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *In re Parentage of Rogan M.*, 2014 IL App (1st) 132765, ¶ 9.

¶ 32    Where the trial court has entered a final judgment as to one or more but fewer than all of the parties or claims, a party may appeal if the trial court has made an express written finding that there is no just reason for delaying the appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 33    Certain types of judgments and orders, however, are appealable without the 304(a) written finding. As relevant to this matter, Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), provides:

> "(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

(1) A judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party."

¶ 34    An order denying a motion to dismiss, like the order at issue in this case, generally is not a final appealable judgment, as it does not conclusively determine the parties' rights or interfere with the continuation of the proceedings. *In re Marriage of Wass*, 94 Ill. App. 3d 436, 439 (1981); *Hutter v. Lake View Trust & Savings Bank*, 54 Ill. App. 3d 653, 656 (1977); *In re D.J.E.*, 319 Ill. App. 3d 489, 492 (2001) (citing *In re Estate of Stepp*, 271 Ill. App. 3d 817, 819 (1995)). Accordingly, we would not have jurisdiction over an appeal from that order, unless it is permitted under an Illinois Supreme Court Rule or statute. *Verdung*, 126 Ill. 2d at 553.

¶ 35    The Executor contends that our jurisdiction arises out of Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), which is set out above. The committee comments to Rule 304(b)(1) indicate that "[s]ubparagraph (1) applies to orders that are final in character although entered in comprehensive proceedings that include other matters. Examples are an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988). " 'Only final orders fit within Rule 304(b)(1).' " *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 84 (quoting *Stephen v. Huckaba*, 361 Ill. App. 3d 1047, 1051 (2005)).

¶ 36    Our courts have interpreted Rule 304(b)(1) as appropriate to "promote efficiency and the sound and practical administration of estates, guardianships, and other similar types of proceedings" by recognizing that "some issues in those types of lengthy proceedings must be resolved with certainty to avoid having to repeat the entire proceeding over again." *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 23. As our courts have explained, Rule 304(b)(1) is designed

to prevent multiple lawsuits and piecemeal appeals, while encouraging efficiency and granting certainty as to specific issues during the often lengthy process of estate administration. *In re Estate of Thorp*, 282 Ill. App. 3d 612, 616 (1996). "Without the Rule 304(b)(1) exception, an appeal would have to be brought after an estate was closed, the result of which may require reopening the estate and marshalling assets that have already been distributed." *Id.* at 616-17.

¶ 37     The Executor contends that the July 20, 2017, order denying his motion to dismiss the renunciation "finally determined that [Christina] had renounced the Will on January 24, 2017, and by operation of 755 ILCS 5/2-8, [Christina] became entitled to ⅓ of the entire estate after payment of all just claims," and that "[a]bsent the renunciation of the Will, Christina is not a legatee under the Will and would be entitled to no distributions from the Estate."

¶ 38     Before determining whether the order may be appealed under Rule 304(b)(1), we note that the Executor's motion to dismiss Christina's renunciation was actually a combination of two motions to dismiss—the first, with prejudice for untimely filing, and the second, without prejudice for the lack of a personal signature.

¶ 39     Regarding the Executor's motion to dismiss with prejudice, once the trial court denied that motion, no additional judicial action was required before Christina's renunciation was perfected. See *In re Estate of Friedman Scherr*, 2017 IL App (2d) 160889, ¶ 14. Accordingly, the denial of the Executor's motion to dismiss finally determined Christina's entitlement to one-third of James's estate, as a renouncing surviving spouse (see 755 ILCS 5/2-8 (West 2016)), which we find to be the type of issue to which an immediate appeal under Rule 304(b)(1) would apply. We thus conclude that the trial court's order denying the Executor's motion to dismiss Christina's renunciation is one that "finally determines a right or status of a party." For the purposes of judicial efficiency and to facilitate the sound and practical administration of the estate and trust

in the present case, we find that the denial of the Executor's motion to dismiss Christina's renunciation with prejudice was final and appealable under Rule 304(b)(1) and that we have appellate jurisdiction to consider the merits of the issues raised as to that order.

¶ 40    The denial of the Executor's motion to dismiss the renunciation without prejudice with leave to refile for the lack of a personal signature, however, is not an order that finally determined the right or status of a party.

¶ 41    By arguing that Christina's renunciation should be dismissed without prejudice with leave to refile a new renunciation, the Executor apparently conceded that the lack of signature was not a fatal defect that required a dismissal with prejudice. Christina responded that the signature of her attorney was sufficient, but considering that the Executor was only asking the court to dismiss her renunciation with leave to refile, she stated that she was "willing and able to sign said Renunciation if and in the manner that would please this Court."

¶ 42    At oral argument, the Executor requested only that the court "grant the motion to dismiss the right of renunciation filed January 2017 *as untimely*" (emphasis added), but never requested a specific ruling on the lack of personal signature, despite Christina's offer to remedy its absence. The trial court's written order explicitly denied the Executor's "Motion to Dismiss Renunciation of Last Will by Section 2-619(5) *Statute of Limitations* *** for the reasons stated on the record." (Emphasis added.). Although the trial court did not specifically reference the Executor's signature argument, the argument was also implicitly rejected by the trial court's denial of the Executor's motion.

¶ 43    By denying the Executor's request to dismiss Christina's renunciation without prejudice to allow her to refile it, the trial court did not "finally determine a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). Moreover, although the Executor contends that Christina

can no longer remedy a defect in her renunciation based on the lack of personal signature because the subsequent passage of time would make "any future renunciation instruments *** time barred," we note that the trial court may allow a party to amend its pleadings "[a]t any time before final judgment *** on just and reasonable terms" (735 ILCS 5/2-616(a) (West 2016)) or "at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just" (*id.* § 2-616(c)). Accordingly, we conclude that the denial of the Executor's motion to dismiss without prejudice is not the type of issue to which an immediate appeal under Rule 304(b)(1) would apply, and thus, we lack jurisdiction to consider that denial in this appeal.

¶ 44    Christina next asserts that even if the Executor has a right to appeal the order of July 20, 2017, he does not have the right to raise an issue regarding whether her renunciation was timely filed. Christina contends that the timeliness of her renunciation was decided in the September 22, 2016, order, which, despite containing Rule 304(a) language, was not appealed by the Executor. Because the Executor did not choose to appeal that judgment, Christina contends that the present appeal is untimely and the Executor cannot challenge the prior order in an appeal from a later order. See *Tuna v. Airbus, S.A.S.*, 2017 IL App (1st) 153645, ¶ 26.

¶ 45    Based on this court's review of the record, it is abundantly clear that throughout the litigation, the trial court was considering how to deal with James's many breaches of the premarital agreement and, in light of those breaches, whether Christina should be held to her waiver of her probate rights in that agreement. To that end, the trial court forecasted on several occasions, that it could "throw out" the premarital agreement, and give Christina the probate rights she would have been entitled to had she not waived them in the premarital agreement, including her right to renounce the will. These discussions occurred more than seven months

after James's will was admitted to probate, and the Executor now claims that the court had no authority to allow her to renounce the will beyond that time frame.

¶ 46    Nevertheless, on September 22, 2016, the court did give her the right to renounce the will. Specifically, the court found the premarital agreement to be "not valid, illusory and void" and explicitly allowed Christina to "file for all things allowed by spouses, including but not limited to spouse allowance, statutory share and custodial care claims, renunciation of will." That order also contains the requisite language under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), making the order immediately appealable. See *Koenig & Strey GMAC Real Estate v. Renaissant 1000 South Michigan I, LP*, 2016 IL App (1st) 161783, ¶ 22 (citing *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 260 (2008)).

¶ 47    If the Executor wished to challenge the court's authority to give her the right to renounce the will more than seven months after the will was admitted to probate, the proper time period to raise such a challenge was during the hearings leading up to the September 22, 2016, order, or in a timely motion to reconsider or a notice of appeal from that order. The Executor, however, chose not to file a motion to reconsider or notice of appeal from the September 22, 2016, order. In such circumstances, he may not seek a review of that order in this appeal from a subsequent order entered in the same case. *Battaglia v. Battaglia*, 231 Ill. App. 3d 607, 615 (1992). Accordingly, the Executor cannot now challenge the trial court's order invalidating the premarital agreement or allowing Christina to file for a renunciation, since those issues were previously decided in an order from which the Executor chose not to appeal. See *Tuna*, 2017 IL App (1st) 153645, ¶ 26 ("Where a party fails to file a notice of appeal within 30 days of a finding pursuant to Rule 304(a), the judgment becomes final and prevents litigants from challenging that judgment in an appeal from a later order.").

21

¶ 48 The Executor, however, contends that the September 22, 2016, order should not be read to have given Christina her renunciation rights, since the time frame for exercising them had expired. Instead, the Executor contends that Christina was only released from her waiver in the premarital agreement, but that the order

> "does not grant to [Christina] any new rights that [Christina] did not possess as of the September 2016 date. The September 2016 Order does not speak of restoring any rights that had lapsed. The September 2016 [order] merely invalidates the Premarital Agreement and allows [Christina] to pursue any statutory rights [Christina] had preserved as of the September 2016 date, such as the custodial care claim filed in January 2015."

¶ 49 We disagree. The Executor's proposed interpretation of the September 22, 2016, order strains credulity and would render the plain language of the trial court's order meaningless. The trial court explicitly ordered that Christina "*shall be allowed to file* for all things allowed by spouses, including but not limited to spouse allowance, statutory share and custodial care claims, *renunciation of will*." (Emphases added). Moreover, in the context of the litigation as described above, it is clear to this court that the trial court did not intend to provide Christina with damages for James's breaches that were wholly illusory. Because the only logical reading of the trial court's order of September 22, 2016, is that the trial court restored the probate right of Christina by explicitly allowing her to renounce James's will beyond the statutory time frame, that judgment is no longer appealable.

¶ 50 Nevertheless, to the extent that we could reach the timeliness issue, we would still conclude that the trial court did not err in denying the Executor's motion to dismiss Christina's renunciation.

¶ 51    Section 2-8(b) of the Probate Act provides, in relevant part, that "[i]n order to renounce a will, the testator's surviving spouse must file in the court in which the will was admitted to probate a written instrument signed by the surviving spouse and declaring the renunciation" within "7 months after the admission of the will to probate." 755 ILCS 5/2-8(b) (West 2016). This court has found that the seven-month time period for renunciation is mandatory and is treated as a statute of limitations in Illinois. *Goodlett*, 225 Ill. App. 3d 581; *In re Estate of Duncan*, 171 Ill. App. 3d 594 (1988).

¶ 52    This court has noted that the "concepts of equitable estoppel, tolling, and waiver usually apply to statutes of limitations," and this court has considered those concepts in determining whether to extending the time frame for the filing of a renunciation, since the time limitation is akin to a statute of limitations. See *Goodlett*, 225 Ill. App. 3d 581. "Equitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000).

¶ 53    Our review of the record in this case reveals a unique set of circumstances that warrant the application of equitable tolling in this case. Specifically, Christina had explicitly waived her right to file a renunciation pursuant to the parties' premarital agreement, which the Executor contended was valid and prevented her from exercising her probate rights. See *Golden*, 393 Ill. at 539-40 ("a wife can effectively bind herself during the lifetime of her husband to accept the provisions of her husband's will and thereby estop her from renouncing it after his death"). Christina's waiver was later invalidated due to James's breaches of the premarital agreement, which were so extensive and complicated that they prevented the court from being able to assess

damages and instead required the invalidation of the premarital agreement as a whole. It was only at the point when the premarital agreement was invalidated that Christina was able to file her renunciation. Under these circumstances, we hold that the circuit court did not err when it denied the Executor's motion to dismiss the renunciation.

¶ 54    The Executor, however, cites two cases in which the appellate court has found that the trial court did not have discretion to allow a surviving spouse to renounce a will after the statutory time frame had expired. See *Rosene*, 66 Ill. App. 3d 999; *Goodlett*, 225 Ill. App. 3d 581 (1992). We find these cases distinguishable from the instant case.

¶ 55    In *Rosene*, a widow failed to file a renunciation instrument until eight months after the decedent's will was submitted to probate. The court noted:

> "The widow [did] not contend she did not know of her right to renounce the will or that she was defrauded by the executor or other relatives of the decedent. [Citations.] The record demonstrates her attorney advised her it was in her best interest to renounce the will and to execute the written form for that purpose which he sent to her. She failed to do so and that choice also is one she was entitled to make." *Rosene*, 66 Ill. App. 3d at 1001.

The court thus found "no basis upon which the statutory limitation may be extended as now urged by the widow" and that the trial court "did not have discretion to allow the" untimely renunciation. *Id.*

¶ 56    Similarly, in *Goodlett*, this court considered the appeal of an executor from an order granting the widow her statutory share of the estate. *Goodlett*, 225 Ill. App. 3d at 582. In that case, the trial court had relied on the fact that the parties had engaged in negotiations and discussions "with the idea that [the widow] would share in the estate" to conclude that the

executor "was estopped from precluding [the widow] from taking her share based on her failure to timely renounce." *Id.* at 585. The appellate court reversed, however, noting that during their prior negotiations, the executor appeared to have assumed that the widow either had filed, or would file, a timely renunciation and that the widow had not been "misled or defrauded in any way by [the executor or his attorney] into believing that she was not required to file a renunciation to claim her statutory share of [the decedent]'s estate." *Id.* at 592. The appellate court thus found that "any fault in [the widow's] failure to file a timely renunciation should be attributed to [the widow] and her attorney" and that the trial court "did not have discretion to deviate from that statutory prescription and apply equitable principles of estoppel where, as here, the widow was not defrauded by the executor or his attorney." *Id.*[1]

¶ 57    Unlike in the above cases, where it appeared that the surviving spouses merely neglected to file a renunciation within the time period, Christina was prevented from exercising her right to renounce pursuant to the parties' premarital agreement, which was only invalidated based on James's extensive breaches. In these circumstances, we conclude that the time limitation was equitably tolled during the time that Christina was prevented from filing a renunciation and that her later renunciation—filed within seven months of the order invalidating the premarital agreement and explicitly allowing her to file such a renunciation—was timely filed. Since we have so found, we need not reach Christina's alternative argument, that the time frame provided

---

[1]The Executor also cites *Duncan*, 171 Ill. App. 3d 594, as an example of when a court has rejected a late filed renunciation. In that case, however, the surviving husband filed a claim to certain property, but never renounced or even referenced his deceased wife's will in that filing. The husband subsequently died, and five years later, his estate filed a renunciation of his wife's will. The appellate court found that the initial document filed by the husband did not constitute a renunciation, and concluded that his failure to file within the statutory period acted "as an acceptance of the terms of the will." Because there is no dispute that the document Christina filed—titled "Renunciation of Will"—was intended to renounce James's will, *Duncan* is also distinguishable from the instant case.

in section 2-8(b) is merely directory—not mandatory—and that *Duncan*, 171 Ill. App. 3d 594, was wrongly decided.

¶ 58    Accordingly, we affirm the trial court's order denying the Executor's motion to dismiss.

¶ 59    Affirmed.